**Fred P. GARDNER, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

No. 90–120.

United States Court of Veterans Appeals.

Argued Aug. 7, 1991.

Decided Nov. 25, 1991.

As Amended Dec. 3, 1991.

J. Michael Hannon, Washington, D.C., as amicus curiae.

Robert L. Nelson, Lawrence B. Hagel, and Michael P. Horan, Washington, D.C., filed a brief, for the Paralyzed Veterans of America, as amici curiae.

Barton F. Stichman, Gershon M. Ratner, David F. Addlestone, Ronald S. Flagg, Brian L. Rubin, and Jeremy O. Preiss, Washington, D.C., filed a brief, for the National Veterans Legal Services Project and the Vietnam Veterans of America, as amici curiae.

Andrew J. Mullen, Deputy Asst. Gen. Counsel, with whom Raoul L. Carroll, then Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Jacqueline E. Monroe, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Associate Judges.

NEBEKER, Chief Judge:

Appellant, Fred P. Gardner, seeks reversal of a January 26, 1990, Board of Veterans' Appeals' (BVA) decision denying him entitlement to Department of Veterans Affairs (VA) benefits. The BVA ruled against appellant pursuant to 38 C.F.R. § 3.358(c)(3) (1990), on the grounds that his injuries were not a result of negligence or accident on the part of his VA doctors. We hold that 38 C.F.R. § 3.358(c)(3) is contrary to statutory authority and outside the scope of the VA's authority. We therefore remand the case to the BVA for further proceedings on the claim.

Appellant, a veteran of World War II, underwent back surgery for a non-service-connected back condition in June of 1986 at

a VA medical facility. R. at 1. He asserts that his left leg suffered severe nerve and muscle damage as a result of surgery. On November 18, 1988, he filed a claim for compensation, under 38 U.S.C. § 1151 (formerly § 351), alleging that his left leg condition was secondary to the 1986 back surgery. R. at 263. The VA Regional Office (RO) denied his claim by a rating decision on January 26, 1989, finding no indication of negligence in the surgical procedure. R. at 267, 268. On September 5, 1989, the VARO confirmed this rating action, relying on 38 C.F.R. § 3.358(c)(3), which requires either accident or fault on the part of the VA for the veteran to receive compensation for increased disability for any aggravation or injury resulting from treatment at a VA facility. The BVA affirmed the RO decisions on January 26, 1990, stating, "we do not find evidence of fault on the part of the VA, or of the occurrence of an unforeseen, untoward event, resulting in permanent additional disability. Accordingly, entitlement to the benefits requested is not demonstrated." R. at 303. Appellant subsequently appealed to this Court under 38 U.S.C. § 7266 (formerly § 4066).

## ANALYSIS

Resolution of appellant's claim requires the Court to focus on whether 38 C.F.R. § 3.358(c)(3) properly implements 38 U.S.C. § 1151 by including an element of fault. Section 1151 reads in pertinent part:

Where any veteran shall have suffered an injury or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation ... not the result of the veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation ... shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.

The regulation at section 3.358(c)(3), which interprets the statute, reads in pertinent part:

Compensation is not payable for either the contemplated or foreseeable after results of approved medical or surgical care properly administered, no matter how remote, in the absence of a showing that additional disability or death proximately resulted through carelessness, negligence, lack of proper skill, error in judgment, or similar instances of indicated fault on the part of VA. However, compensation is payable in the event of the occurrence of an "accident" (an unforeseen, untoward event), causing additional disability or death proximately resulting from VA hospitalization or medical or surgical care.

Section 7261(a)(3)(C) (formerly § 4061(a)(3)(C)) of title 38 requires the Court to "hold unlawful and set aside ... rules and regulations issued or adopted by the [Secretary] ... found to be ... in excess of statutory jurisdiction, authority, ... or in violation of a statutory right." Determining whether section 3.358(c)(3) is in violation of statutory authority involves examining the language of the statute, and the interpretation given it by its administering agency. *See Brock v. Writer's Guild of America West, Inc.,* 762 F.2d 1349, 1353 (9th Cir.1985).

### THE LANGUAGE OF THE STATUTE

■ Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute. *Bethesda Hospital Assn. v. Bowen,* 485 U.S. 399, 403–405, 108 S.Ct. 1255, 1258–1259, 99 L.Ed.2d 460 (1988). Here, the language of the statute provides that any veteran who has a disability incurred or aggravated during the course of a VA-authorized health examination, treatment, or vocational rehabilitation is entitled to have that disability treated as service-connected. Both the parties and amici agree that, under a literal reading, the statute's language does not indicate an element of fault. Appellee's Response to Order of the Court to File a Supplemental Memorandum (App.Resp.) at 4, and brief of J. Michael Hannon, amicus curiae (Hannon brief) at 5. This plain meaning must be given effect unless a "literal application of

[the] statute will produce a result demonstrably at odds with the intention of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982).

The Secretary focuses on the language "injury resulting in additional disability" to support the argument that giving full play to the plain meaning of section 1151 would lead to ludicrous results. App.Resp. at 5. This language, according to the Secretary, could encompass *any* change in the veteran's physical condition as a result of a medical procedure. For example, a non-service-connected disability, such as diabetes, could be converted into a service-connected disability if the disease led to amputation of an extremity. Such a loss could then be construed as an injury resulting in an additional disability and, therefore, be compensable under the plain language of the statute.

█ The "absurd result" exception to the plain meaning rule is, however, narrow and limited to situations "where it is quite impossible that Congress could have intended the result ... and where the alleged absurdity is so clear as to be obvious to most anyone." *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 470–71, 109 S.Ct. 2558, 2574–75, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring). Absent an absurd result, the plain meaning of the statute will be applied unless such an application is contrary to the apparent intention of Congress. *Thompson/Center Arms Co., A Div. of the K.W. Thompson Tool Co. v. United States*, 924 F.2d 1041, 1044–45 (Fed.Cir.1991) ("[o]nly very clear evidence of contrary legislative intent can displace the plain meaning of a statute").

Furthermore, as Amicus Hannon points out, it is not unlikely that Congress designed a no-fault statute given its experience in enacting legislation concerning both common law negligence and the no-fault approach to liability. Hannon brief at 5. *See, e.g.,* 28 U.S.C. §§ 2671–2680 (1988) (Federal Torts Claim Act); 33 U.S.C. §§ 901–950 (1988) (Longshore and Harbor Workers' Compensation Act).

The Secretary argues that the language of the statute indicates an intent to limit the applicability of section 1151 to cases in which fault can be demonstrated on the part of the Department or its agents. According to the Secretary, statutory language precluding compensation when the *veteran* is at fault implies that compensation is payable only when VA personnel are at fault. We do not find such an implication. The statute imposes only two limitations on the granting of service-connected benefits; first, as long as the injury or aggravation occurs "as a result of" exposure in one of four circumstances and, second, is not a "result of such veteran's willful misconduct," benefits will be made available. 38 U.S.C. § 1151. This language reveals that Congress considered the issue of fault while drafting the statute and suggests that, although fault of the veteran is relevant to a determination of eligibility for compensation, the fault of VA personnel is not. As the Supreme Court has noted, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983).

The Secretary further argues that section 3.358(c)(3) does accommodate no-fault, non-negligent situations since it allows recovery when injury is caused by "accident." The Secretary's definition of "accident", however, does not include certain ill effects which may flow from surgery even though the operation is performed with the greatest possible degree of skill and precaution and no one is at fault. Although allowing recovery when injury is the result of accident increases the number of cases compensable under section 1151, foreseeable consequences of medical care and treatment, no matter how remote, are still excluded under section 3.358(c)(3). The plain language of section 1151 places no such limitations on recovery.

## LEGISLATIVE HISTORY

█ Where a statute's language is plain, and its meaning clear, no room exists for

construction. There is nothing to construe. *See Lewis v. United States,* 92 U.S. 618, 23 L.Ed. 513 (1876). Yet, the Secretary urges us to peruse the legislative history of section 1151 for proof that the plain meaning of section 1151 was not intentional. Legislative records contemporaneous with section 1151's precursor, section 213 of the World War Veterans' Act, Pub.L. No. 68–242, 43 Stat. 607 (1924), contain little or no congressional comment with respect to that section of the Act. The Secretary points to statements made by General Frank T. Hines, then Director of the Veterans' Bureau, which mentioned the need for a provision to compensate veterans hurt through medical negligence. *World War Veterans' Legislation: Hearings before the Comm. on World War Veterans' Legislation,* 68th Cong., 1st Sess., 113 (1924). In those same hearings, however, General Hines also made comments recommending a no-fault statute. *Id.* at 114. The Secretary's arguments are not persuasive.

Finally, the Secretary asserts that congressional failure to modify the VA's interpretation when it amended section 1151 signaled implicit congressional approval of section 3.358(c)(3). Although at times "[c]ongressional reenactment of a statute can strengthen a regulation's claim to validity, reenactment cannot save a regulation which contradicts the requirements of the statute itself," *i.e.,* the statute's plain meaning. *Horner v. Andrzjewski,* 811 F.2d 571, 575 (Fed.Cir.1987), *cert. denied,* 484 U.S. 912, 108 S.Ct. 257, 98 L.Ed.2d 215 (1987). Reenactment of section 1151, therefore, could not have validated or ratified 38 C.F.R. § 3.358(c)(3), where the language of the regulation continued to be inconsistent with the statute's plain meaning. *See Manhattan Gen. Equip. Co. v. Comm'r,* 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936) (a regulation not in harmony with authorizing statute is a mere nullity).

### ADMINISTRATIVE AGENCY'S INTERPRETATION

■ The last step of the Court's inquiry involves examining the administrative agency's interpretation of section 1151.

Section 501(a) of title 38, United States Code, gives the Secretary authority to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the [VA] and are consistent with those laws." 38 U.S.C. § 501(a), Pub.L. No. 102–83, § 2(a), 105 Stat. 378, 386 (1991).

Given that authority, the Secretary encourages the Court to defer to the VA's interpretation of section 1151, citing to the principle that great weight is attached to the construction given a statute by an administrative agency. *United States v. Jackson,* 280 U.S. 183, 50 S.Ct. 143, 74 L.Ed. 361 (1930). The Secretary fails to recognize that although courts frequently grant deference to an administrative agency's interpretation of an applicable statutes, this is true only when the statute is unclear. *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981). Furthermore, even where courts grant deference, they are not bound by the administrative agency's construction: "the courts are the final authorities on issues of statutory construction." *Id.* at 32, 102 S.Ct. at 42.

■ Therefore, given the plain meaning of section 1151, and the inconsistency of the administrative agency regulation with the statute, the plain language of section 1151 must be implemented. *See, e.g., Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989); *International Brotherhood of Electrical Workers, Local Union No. 474, AFL–CIO v. NLRB,* 814 F.2d 697, 719 (D.C.Cir.1987). The Court holds 38 C.F.R. § 3.358(c)(3) unlawful as exceeding the authority of the Secretary and in violation of the statutory rights granted to veterans by Congress under section 1151. Accordingly, the decision of the BVA is REVERSED and the matter is REMANDED for further proceedings.

### SPECIAL APPRECIATION

The Court is indebted to Mr. J. Michael Hannon, esq., of Thompson, McGrail,

O'Donnell & Harding, who, on the court's request, wrote an amicus brief and presented oral argument. His superb analysis of the issues involved was of tremendous value to the Court and refuted the argument, often advanced by attorneys unfamiliar with veterans' benefits law, that the complexity of the law places them at a considerable disadvantage. The Court also expresses its thanks to counsel for the Secretary and to the Paralyzed Veterans of America, the National Veterans Legal Services Project, and the Vietnam Veterans of America for their significant contributions.