Samuel L. FELTON, Appellant,

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 90–965.

United States Court of Veterans Appeals.

March 11, 1993.

David A. Belinky, Columbus, OH, for appellant.

Rick Surratt, Washington, DC, for Disabled American Veterans, as amicus curiae.

Michael P. Butler, with whom Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Andrew J. Mullen, Deputy Asst. Gen. Counsel, Washington, DC, were on the brief, for appellee.

Before KRAMER, IVERS and STEINBERG, Associate Judges.

## ORDER

PER CURIAM.

On January 14, 1993, the Court issued an opinion in this case which reversed and remanded the June 7, 1990, decision of the Board of Veterans' Appeals with instructions for further proceedings consistent with the Court's opinion. In its opinion,

the Court invalidated 38 C.F.R. § 3.558(c)(2) (1991) as in excess of statutory authority. The Secretary of Veterans Affairs (Secretary) filed a motion for reconsideration, for en banc review, and to stay further proceedings. The Secretary's motion does not challenge the Court's invalidation of 38 C.F.R. § 3.558(c)(2). The Secretary states that he

> is not herein questioning the decision on the merits, and the Court's invalidation of section 3.558(c)(2) is not the subject of the instant motion. Upon remand, the agency of original jurisdiction will take action to disburse the appropriate lump sum to the veteran, through his fiduciary custodian (taking into account the Court's recommendation that a different custodian first be appointed), and, pursuant to part III the Secretary will report to the Court within 90 days. Although the judgment has not yet been entered in this matter, the veteran's claims file has been returned to the AOJ for prompt initiation of action to comply with the decision of the Court.

Secretary's Mot. at 3. Instead, the Secretary argues that the language of the Court's interpretation of 38 U.S.C.A. § 5503(b)(1)(B) (West 1991), the governing statute, by implication and unnecessarily invalidates 38 C.F.R. § 3.558(c)(1) (1991). The Court agrees that the language of the opinion could be so interpreted.

On February 19, 1993, appellant filed a motion, under interim Rule 36(b) of this Court's Rules of Practice and Procedure, requesting that the Court retain jurisdiction under the Equal Access to Justice Act in order to permit application for attorney fees and expenses pursuant to Rule 39. Also on February 19, 1993, appellant filed a memorandum in opposition to the Secretary's motion to stay further proceedings. In that memorandum, appellant argues that, since the basis for the Secretary's motion for reconsideration was the argument that the decision was not decided on the narrowest basis and did not relate to the merits of the decision, the "request was purely academic in nature." Appellant's Memorandum at 2. Appellant further states that "[c]ourts usually do not decide or answer issues that are purely academic. Notwithstanding, the Court should not stay its decision because the Secretary intends on awarding the veteran his retroactive lump sum benefits." *Id.*

The Court is in sympathy with the positions of both parties. Accordingly, in lieu of issuing a stay, we vacate the Court's January 14, 1993, opinion and issue, this date, a new opinion modifying and clarifying the language cited by the Secretary. The Court notes the representations of the Secretary that this action will not affect the processing of the lump-sum payment to the appellant and expects that such processing will take place expeditiously, within 90 days after the date of the Court's first opinion (January 14, 1993).

On consideration of the foregoing, it is

ORDERED that the Secretary's motion to stay further proceedings is denied; it is further

ORDERED that the Secretary's motion for reconsideration is granted and his motion for en banc review by the Court is denied as moot; it is further

ORDERED that appellant's motion under Rule 36(b) is denied as premature. *See* 38 U.S.C.A. § 7292(a) (West 1991); 28 U.S.C.A. §§ 2107(d)(2)(G) (West 1992); U.S.Vet.App.R. 39(a) (Interim rule adopted Feb. 1, 1993). It is further

ORDERED that the opinion of this Court dated January 14, 1993, is hereby vacated by the Court, and replaced by the opinion filed this date; and it is further

ORDERED that the Secretary, not later than April 16, 1993, advise the Court of the status of disbursement of the lump-sum payment.

IVERS, Associate Judge:

The appellant, Samuel L. Felton, appeals from a June 7, 1990, Board of Veterans' Appeals (BVA) decision which denied the release of Department of Veterans Affairs (formerly the Veterans' Administration) (VA) funds suspended pursuant to 38 C.F.R. § 3.558(c)(2) (1991), because the VA found him to be incompetent. For the rea-

sons set forth below, the Court holds that 38 C.F.R. § 3.558(c)(2) is unlawful in that its issuance exceeds the authority of the Secretary of Veterans Affairs (Secretary) and violates the provisions of 38 U.S.C.A. § 5503(b)(1)(B) (West 1991) and 38 U.S.C.A. § 501(a) (West 1991). Accordingly, the decision of the BVA is reversed and the matter is remanded for further proceedings.

## I. Background

The veteran served in the United States Army from March 12, 1943, to November 13, 1945, and then in the United States Air Force from October 13, 1954, to June 22, 1956. R. at 1–2. The veteran was discharged for a 100% disability, dementia praecox, mixed type. R. at 2–3. The veteran was hospitalized at Philadelphia General Hospital from July 11, 1957, to July 22, 1957, and again from August 3, 1957, to September 10, 1957. R. at 145. The veteran was transferred to the VA Hospital in Coatesville, Pennsylvania, on September 10, 1957, where he was diagnosed as having schizophrenia, chronic, undifferentiated type "X & P." R. at 4. On April 29, 1958, the veteran was rated incompetent. R. at 12. The veteran remained continually hospitalized at the Coatesville VA facility until 1985. *Id.* In March 1985, he was transferred to the VA Medical Center at Chillicothe, Ohio, in order to be near his family. R. at 7. On June 7, 1985, the veteran was discharged to the care of his son and daughter-in-law, although he was found at the time to be "not competent for VA purposes." R. at 8.

The VA elected to have a third party appointed custodian-in-fact, or fiduciary custodian, of the veteran. On May 20, 1987, David A. Belinky, Esq., counsel in the case before us, applied for appointment as the veteran's guardian. R. at 25. Represented by another attorney and opposed by Mr. Belinky, the veteran challenged both his incompetency rating and the appointment of the guardian in Ohio state probate court. The probate court referee recommended that he be found competent, R. at 24–28, and the probate court apparently so found, R. at 157.

In June 1987, the veteran petitioned the Cleveland, Ohio, VA Regional Office (VARO) that he be rated as competent. R. at 16. To support this contention, the veteran submitted a copy of the transcript from his July 30, 1987, hearing in the Ohio probate court. As noted, the probate court referee had concluded that the veteran was competent. R. at 28. The veteran also submitted deposition testimony, taken on June 29, 1987, from his VA psychiatrist. R. at 29–39. That psychiatrist also concluded that the veteran was competent. R. at 36. Accordingly, the VA rated the veteran as competent on September 8, 1987, with an effective date of May 5, 1987. R. at 42–43.

Pursuant to its own internal administrative procedures, the VA conducted a follow-up field examination on December 7, 1987. R. at 47–49. Based upon that examination, the VA examiner concluded that the veteran was not competent to handle either his monthly income or "a large estate," without direct assistance or supervision. R. at 49. The VA conducted a complete psychiatric examination in January 1988. The psychiatrist concluded that the veteran was mentally incompetent to handle VA benefits. R. at 56. As a consequence of that examination, the VA proposed, on February 24, 1988, to rate the veteran incompetent. R. at 58. He was advised of this by letter dated March 1, 1988. R. at 71. The VA rated him incompetent for VA purposes on May 11, 1988. R. at 83–84.

In July 1988, a hearing was conducted before the rating board at the VARO. R. at 110–43. The veteran testified that he routinely gave his VA disability compensation check to his son and daughter-in-law. R. at 122. A second VA field examination involved the veteran, his son, and his daughter-in-law. R. at 150–56. The veteran, when asked how he handled his money, told the field examiner: "I let my people take care of my money.... [T]hey treat me nice, feed me, and let me have the run of the house." R. at 151. The examiner determined that the veteran could not handle his own financial affairs and recommended appointment of a custodian. R. at 152–53. The veteran received a second VA

psychiatric examination in August 1988. He told the examiner: "I [cannot] do it [handle his own money], I don't know how I'd spend it. I would prefer my son help me pay my bills." R. at 166. The VA examiner's conclusion was, again, that the veteran needed assistance in managing his finances. *Id.* The veteran was also administered a battery of psychological tests which led the examiner to conclude that it was unlikely that the veteran had the ability to deal with assets of over $100,000.00. R. at 170. The VARO issued a rating decision on October 31, 1988, finding the veteran incompetent. R. at 171–74.

A telephone inquiry, on behalf of the veteran, to the VARO, from Ohio U.S. Senator Glenn's office on December 21, 1988, was deemed to be a Notice of Disagreement (NOD) by the RO. R. at 177. A Statement of the Case was forwarded to the veteran on December 27, 1988. R. at 178–86. The Cleveland VARO director also replied to Senator Glenn, with a letter dated December 27, 1988, in which he spelled out the justification for the decision. R. at 187–90. In February 1989, Senator Glenn wrote to BVA Chairman Eaton, expressing his opinion that the VA decision in this case was in error. R. at 191–92. On February 21, 1989, through his attorney, David Belinky, the veteran also filed an appeal, with attachments, to the BVA. R. at 193–99. In June 1989, to further bolster his case to the BVA, the veteran, through Senator Glenn's office, submitted a May 22, 1989, mental hygiene report, apparently from his own VA psychiatrist, wherein it was concluded that he was competent for VA purposes. R. at 218–19.

The BVA issued its first decision on September 28, 1989, remanding the decision with instructions that "the office of original jurisdiction should review the veteran's claim with consideration to the provisions of 38 C.F.R. § 3.558(c)(2)." R. at 231. After that review and a continued rating of incompetency by the RO on November 9, 1989, R. at 237, the BVA, on June 7, 1990, held that the veteran was incompetent to handle his own assets and that he was clearly incompetent for VA purposes. *Samuel L. Felton,* BVA 90–18233, at 4

(June 7, 1990). Consequently, a lump-sum payment of the funds withheld under 38 C.F.R. § 3.557 was denied. The BVA then determined that 38 C.F.R. § 3.558(c)(2) prohibited the release of lump-sum payments to a veteran who was re-rated incompetent after having been rated competent and who has no proper dependent. The BVA determined that the veteran had no proper dependent. *Felton,* BVA 90–18233, at 4–5. More important, the BVA determined that 38 C.F.R. § 3.558(c)(2) specifically empowers the VA to withhold funds due competent veterans if they are subsequently re-rated incompetent (and lack a proper dependent), if funds had not yet been disbursed. *Id.* The BVA found, as a matter of fact, that the veteran was re-rated incompetent, effective May 11, 1988, some 12 months after May 5, 1987, the effective date of his initial rating as competent by the VA. *Id.* at 6. The veteran appealed the BVA decision on September 6, 1990. Because of the telephonic NOD, the issue of this Court's jurisdiction was raised, and the Court determined on December 17, 1990, that it did have jurisdiction. After additional procedural disputes, the Court issued an order instructing the appellant and the Secretary to present oral argument on the four specific questions discussed below. The appellant, the Secretary, and the Disabled American Veterans (DAV), as *amicus curiae,* presented argument on June 12, 1992.

## II. Analysis

The case before us raises specific questions, two involving statutory interpretation and two involving constitutional issues. Those questions are as follows: (1) Does 38 U.S.C.A. § 5503(b)(1)(B) mandate lump-sum payment "after the expiration of six months following a finding of competency" by the VA regardless of whether a veteran is thereafter again found incompetent after such expiration? (2) If lump-sum payment is mandatory under section 5503(b)(1)(B) as described in question (1), does 38 C.F.R. § 3.558(c)(2) impose an unauthorized limitation on the scope of § 5503(b)(1)(B), by denying such payment to those veterans who before payment is

made are "again rated incompetent" and do not have "a proper dependent"? (3) If the limitation imposed by § 3.558(c)(2) is not precluded by statute, is that provision, nevertheless, constitutionally defective in distinguishing between those non-hospitalized veterans who are rated incompetent by VA and who have a proper dependent and those who are rated incompetent by the VA and who have no proper dependent? (4) If the answer to the third question is that the distinction is constitutionally permissible on its face, is § 3.558(c)(2), nevertheless, constitutionally defective, as applied to the facts of this case, in distinguishing between veterans who are rated incompetent by the VA and who have a proper dependent and those who are rated incompetent but do not have a proper dependent but for whom a legal custodian or guardian has been appointed?

For the reasons set forth below, the Court answers the first two questions affirmatively. As a consequence, we hold that the BVA erred in its decision to deny the veteran payment, in a lump sum of the suspended benefits, and we hold that 38 C.F.R. § 3.558(c)(2) is "contrary to statutory authority and outside the scope of the VA's authority." *Gardner v. Derwinski*, 1 Vet.App. 584, 585 (1991); 38 U.S.C.A. § 7261(a)(3)(C) (West 1991). Therefore, the BVA decision will be reversed and the matter remanded to the BVA. Because we answer the first two questions affirmatively and decide this appeal accordingly, the Court need not answer the third and fourth questions, which deal with the constitutionality of the regulation. *Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 2996–97, 86 L.Ed.2d 664 (1985) ("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981)).

This Court is required by section 7261(a)(3)(C) of title 38 to "hold unlawful and set aside ... rules and regulations issued or adopted by the [Secretary] ... found to be ... in excess of statutory jurisdiction, authority, or in violation of a statutory right." Determining whether a regulation is not "consistent with" statutory authority involves examination of the language of the statute and, if necessary, the legislative history of the statute and the interpretation given it by its administering agency. *Gardner*, 1 Vet.App. at 586; *see also Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349, 1353 (9th Cir.1985). The Secretary's authority to prescribe regulations to carry out laws administered by the Department is conditioned by two limitations: the regulations must be "necessary or appropriate to carry out [those] laws" and must be "consistent with those laws...." 38 U.S.C.A. § 501(a).

### A. The Language of the Statute

38 U.S.C.A. § 5503(b)(1)(A), (B) reads as follows:

(A) In any case in which a veteran having neither spouse nor child is being furnished hospital treatment or institutional or domiciliary care without charge or otherwise by the United States, or any political division thereof, is rated by the Secretary in accordance with regulations as being incompetent, *and* the veteran's estate (excluding the value of the veteran's home unless there is no reasonable likelihood that the veteran will again reside in such home), from any source equals or exceeds $1,500, further payments of pension, compensation, or emergency officers' retirement pay shall not be made until the estate is reduced to $500.

(B) The amount which would be payable but for this paragraph shall be paid to the veteran in a lump sum; however, no payment of a lump sum herein authorized shall be made to the veteran until after the expiration of six months following a finding of competency and in the event of the veteran's death before payment of such lump sum no part thereof shall be payable.

(Emphasis added). While it is clear from the language of the statute that payment of the lump-sum benefit that had been prohibited by paragraph (1)(A) cannot be made any earlier than six months after a new

rating of competency, the Secretary argues that the statute does not require payment of the lump sum after the expiration of the six-month waiting period. In fact, he argues that "payment of the lump sum may be made after that if appropriate under the circumstances." Brief of the Appellee at 3. In other words, the Secretary contends that section 5503(b)(1)(B) acts only as a "floor" prohibiting, without exception, payments before the waiting period expires and never as a "ceiling" that would require, under any circumstances, payments after the waiting period expired.

The Secretary would have us interpret subparagraph (B) in a vacuum, without reference to its overall context. "[D]etermining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." *Gardner*, 1 Vet.App. at 586 (citations omitted). To begin with, subparagraph (B) of section (b)(1) triggers the release of funds precluded by subparagraph (A). Based upon the plain language of subparagraph (A), suspension of compensation awards is required when four enumerated conditions exist. First, the veteran must be without dependents. Second, the veteran must be receiving hospital treatment, institutional care, or domiciliary care without charge from any U.S. governmental entity. Third, the veteran must be rated incompetent by the Secretary in accordance with regulations. Fourth, the veteran's estate must currently exceed $1,500. Subparagraph (B) provides for restoration of these suspended payments when competency has been achieved, with only one condition: the expiration of a six-month waiting period.

Thus, it appears from reading the text of paragraph (1) as a whole that, while subparagraph (A) suspends compensation only when all four prerequisites exist, subparagraph (B) mandates payment of those suspended payments in a lump sum when one of those conditions—incompetency—ceases to exist for a period of six months. At that point, "the amount which would be payable but for this paragraph shall be paid to the veteran in a lump sum."

In this case, the veteran's compensation was suspended because he met all four conditions of subparagraph (A). In September 1987, he was rated competent, with a competency effective date of May 5, 1987. Consequently, subparagraph (B) required that lump-sum payment be withheld for a six-month period. The veteran continued to be rated competent well beyond the six-month period. The veteran, therefore, should have received his payment on or after November 5, 1987, *while he was rated competent.* The fact that he was re-rated incompetent on May 11, 1988, is irrelevant under the statutory scheme.

### B. Legislative History

■ "Where a statute's language is plain, and its meaning clear, no room exists for construction. There is nothing to construe." *Gardner*, 1 Vet.App. at 587–88. The language of the statute (38 U.S.C.A. § 5503(b)(1)(A), (B)), taken in context, mandates payment to this veteran. Nonetheless, the legislative history provides further illumination of the policy behind the statute and, we believe, reinforces our interpretation of the plain meaning of the legislative language.

The stated policy underlying section 5503 is "to prevent gratuitous benefits for incompetent veterans receiving care at public expense from accumulating in excessive amounts and passing upon the death of the veterans to relatives having no claim against the Government on account of the veteran's military service." S.Rep. No. 344, 86th Cong., 1st Sess. 1 (1959), *reprinted in* 1959 U.S.C.C.A.N. 2048. The public policy purpose is clear. Section 5503 is designed to provide that incompetent veterans, institutionalized at government expense, do not pass their compensation funds to nondependents and others who were never intended to be VA beneficiaries. A secondary purpose of the statute is to prevent the duplication created by providing benefits while, at the same time, providing care and maintenance at the taxpayer's expense. Congress did not intend that VA provide both compensation and institutional care to the veteran, unless he had dependents. Congress, however, clearly

wanted payment of the benefits to be suspended, not terminated, during institutionalization; thus, if the veteran regained competency and was no longer institutionalized, the veteran could then enjoy those benefits which had been temporarily suspended.

In this case, the veteran regained his competency for a period well in excess of six months. He had been deinstitutionalized several years prior, and he remains free from institutionalization to this day. The conditions of both subparagraphs (A) and (B) for payment of the suspended benefits have clearly been met. The fact that he became incompetent on May 11, 1988, is irrelevant, and would only be relevant if he had been reinstitutionalized. Even then, that rating would lead to the suspension of his then current benefits only by triggering application of subparagraph (A).

It is clear that it is contrary to the language and purpose of the statute to deny the veteran his lump-sum compensation. Were the VA to pay him now, it would be the veteran who would be receiving the suspended compensation, not his heirs. Further, there would be no duplication of costs because he is no longer institutionalized by the VA or at VA expense.

### C. The Regulations

In this case, the administrative agency's interpretation of the statute is set forth in 38 C.F.R. § 3.558(c)(2). When the relevant statute is silent or ambiguous, the agency's interpretation will generally be sustained as long as it reflects a permissible construction of the statute. *See N.L.R.B. v. United Food & Commercial Workers Union,* 484 U.S. 112, 123, 108 S.Ct. 413, 416, 98 L.Ed.2d 429 (1987); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Where the statute is unambiguous, the Court must give effect to the plain meaning. "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear Congressional intent." *Chevron,* 467 U.S. at 842–43, n. 9, 104 S.Ct. at 2782–83 n. 9; *see also INS v.*

*Cardoza–Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987). That is the case here.

Accordingly, we must determine whether the VA regulation, § 3.558(c)(2), imposes a limitation on the statutory provision, § 5503(b)(1)(B), which is not "consistent with" that statutory provision and hence exceeds the Secretary's authority to prescribe regulations. Section 3.558(c) of the Code of Federal Regulations reads:

Any amount not paid because of the provisions of § 3.557 will be awarded:

(1) To a veteran who is currently rated competent by VA after the expiration of 6 months following the effective date of the rating of competency....

(2) For a veteran rated incompetent by VA who had met the provisions of subparagraph (1) of this paragraph and who was again rated incompetent by VA before award action could be taken thereunder, if he or she has a proper dependent, and if there was no proper error in the intervening rating of competency. For the purpose of amounts not paid because of the provisions of § 3.557(a), a proper dependent is a spouse, child, or dependent parent. For the purpose of amounts not paid because of the provisions of § 3.557(b), proper dependent is a spouse or child.

Finally, § 3.557(a) reads: "Where a veteran having neither spouse, child, nor dependent, is being hospitalized by VA and is rated incompetent by VA, the pension of such veteran will be subject to reductions as provided...." When read in its entirety, § 3.557 provides for the suspension of benefits to a veteran who is (1) without dependents, (2) has an estate of $1500 or more, (3) is hospitalized, and (4) is rated incompetent by the VA. Regulation section 3.558(c)(1) allows the payment of those suspended payments/awards to a veteran rated competent after expiration of the six-month waiting period. Section 3.558(c)(2) further provides that it is mandatory that an award of suspended benefits be made to a veteran who has been rated competent for more than six months but then is rated incompetent before the awarding of the

suspended benefits. All these provisions of the regulation comply with the mandate of the statute.

What § 3.558(c)(2), also does, however, is *prohibit* the awarding of benefits to a veteran rated competent for six months or longer and then re-rated incompetent *unless* "he or she has a proper dependent ... [and that] proper dependent is a spouse or child." The effect is that a veteran who is re-rated incompetent but remains deinstitutionalized has an additional restriction: no lump-sum payment unless he or she has a spouse or a dependent child. Such a restriction is clearly in contravention of the statute, and the regulation is, therefore, neither "appropriate to carry out" nor "consistent with" the law under 38 U.S.C.A. § 501(a). This added restriction is an unauthorized limitation on the scope of 38 U.S.C.A. § 5503.

The veteran in this case falls squarely within the parameters of § 3.558(c)(2). He is a veteran whose benefits were suspended pursuant to § 3.557, was rated competent by the VA for an effective period of more than 6 months, and did not receive his withheld benefits before he was re-rated incompetent. Thus, because he has no proper dependents, he is denied his benefits, pursuant only to the additional, unauthorized restriction of § 3.558(c)(2).

### III. Representation

We now turn, briefly, to the subject of the representation of the veteran by counsel. His counsel in this appeal was Mr. David A. Belinky, whose first contact with the veteran was as his VA-appointed custodian. After careful review of the record and counsel's response to the Court's inquiries during oral argument, we are satisfied that Mr. Belinky has served the veteran, both as custodian of his current VA benefits and as counsel in this appeal against the VA, in a faithful and competent manner. Nonetheless, this Court recommends that a different individual be appointed as custodian regarding the disposition of the veteran's lump-sum payment, simply to avoid even a hint of either impropriety or conflict of interest. The Secretary is directed to advise the Court within 90 days after the date of this decision of any action taken in this regard.

### IV. Conclusion

The Court holds that because 38 U.S.C.A. § 5503(b)(1)(B) clearly mandates a lump-sum payment after the expiration of a six-month period following competency, 38 C.F.R. § 3.558(c)(2) violates the statute by denying payment to veterans who meet the conditions for payment under the statute but who are rated incompetent before payment is made, and thus unlawfully exceeds the regulation-prescribing authority of the Secretary. Accordingly, the decision of the BVA is REVERSED and the matter is REMANDED for further proceedings, consistent with this opinion.