Reba R. MONTS, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 90–1412.

United States Court of Veterans Appeals.

March 12, 1993.

Reba R. Monts, pro se.

James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Michael R. Smalls were on the brief, for appellee.

Before KRAMER, MANKIN and HOLDAWAY, Associate Judges.

MANKIN, Associate Judge:

Reba R. Monts, widow of veteran Moncel A. Monts, appeals an August 14, 1990, Board of Veterans' Appeals (BVA or Board) decision which denied entitlement to service connection for the cause of veteran's death and denied entitlement to dependency and indemnity compensation (DIC). The Secretary of Veterans Affairs filed a motion for summary affirmance. The Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991). We affirm the BVA decision.

## I. BACKGROUND

Moncel Monts served on active duty from April 1941 to November 1946, and from March 1951 to March 1955. On November 27, 1946, he was awarded service connection for aggravation of a compression fracture of the L–5 vertebra, rated as noncompensable.

In 1984, veteran was diagnosed with prostate cancer. He suffered bone pain in 1985, and upon his admission to the Veterans' Administration (now Department of Veterans Affairs) Medical Center (VAMC) in October 1986, he was diagnosed with metastatic prostate carcinoma to the bone and angina pectoris. Medical Center X rays indicated metastasis to the ribs, right shoulder, pelvis, femur, and the lumbar spine. Veteran was discharged from the VAMC in February 1987, but was again admitted on April 7, 1987, due to complaints of increasing pain. On April 9, 1987, Moncel Monts died. The cause of death was cardiorespiratory arrest, as a consequence of the terminal stage of prostate cancer.

Appellant, veteran's surviving spouse, filed an application for DIC benefits and a claim for service connection for the cause of veteran's death. On September 23, 1987, the rating board denied appellant's claims because the death certificate indicated that cause of death was due to the terminal stage of prostate cancer, which was a non-service-connected condition.

Appellant filed a Notice of Disagreement (NOD) with the rating board decision. She submitted a statement from veteran's urologist, Dr. Mobley, who opined that the fact that the cancer metastasized to the spine (for which veteran was service-connected for a noncompensable compression of the L–5 vertebra) created a reasonable doubt concerning the final cause of death.

In her Substantive Appeal (VA Form 1–9), appellant claimed that Dr. Mobley's letter concluded that veteran died of bone cancer. Appellant also initiated two claims: (1) that veteran's death was caused by radiation exposure; and (2) that veteran's death was hastened by medical malpractice by VAMC personnel. On June 21, 1988, the BVA denied service connection for the veteran's death on the claims of death caused by service-connected condition and death caused by radiation. The Board also stated that the issue of medical malpractice was not fully developed by the VA Regional Office (RO) and that the RO "should take whatever action it deems appropriate."

On November 30, 1988, the VARO held a hearing on Ms. Monts' claim for medical mistreatment. She alleged that during veteran's hospitalization from October 1986 to February 1987 he was mistreated by VAMC Murfreesboro staff through inadequate administration of medication, harassment, and lack of nursing care. The VARO denied this claim on March 2, 1989, and appellant filed an NOD.

Upon reviewing the evidence on appeal, the BVA denied appellant's claims for ser-

vice connection for cause of veteran's death and for DIC. *Reba R. Monts*, BVA ____, at 4–5 (Aug. 14, 1990). Appellant filed a timely appeal to this Court.

## II. ANALYSIS

### A.

■ Appellant contends that service connection for the cause of veteran's death should be granted on a radiation presumptive basis. *Monts*, BVA ____, at 4. The Board correctly found that prostate cancer is not a radiogenic disease under 38 U.S.C.A. § 1112(c) (West 1991), and thus is not subject to any presumptive period. *See* 38 C.F.R. §§ 3.311b, 3.309 (1992).

■ Appellant further contends veteran's death is entitled to service connection because the cancer metastasized to the spine, specifically the L–5 vertebra for which veteran was service connected, and therefore veteran died of bone cancer. The VAMC examination of October 1986, however, indicated that the cancer was caused by his prostate condition, not his service-connected conditions. Apparently, appellant misconstrues the meaning of prostate cancer which has metastasized to the spine. "Metastasis" is the "transfer of a disease-producing agency (as cancer cells . . .) from an original site of disease to another part of the body with development of a similar lesion in the new location." WEBSTER'S MEDICAL DESK DICTIONARY 430 (1986). Prostate cancer which has metastasized to the bone is not the creation of bone cancer.

### B.

■ Appellant also claims that she is entitled to DIC benefits because the medical staff at the VAMC in Murfreesboro allegedly committed medical mistreatment that hastened veteran's death during the period of hospitalization from October 1986 to February 1987. Specifically, appellant contends that

> the veteran was harassed by medical personnel during this period of hospitalization, that this harassment resulted in stress, and that the stress contributed to his cardiorespiratory arrest. In addition,

it is contended that the veteran was denied pain medication from February 5 until his hospital discharge, that this denial of pain medication rendered subsequent attempts to control his pain unsuccessful, and that the uncontrolled pain from the prostate cancer was the cause of his cardiorespiratory arrest.

*Monts*, BVA ____, at 2.

In order for veteran's widow to be awarded DIC benefits, it must be shown that the veteran died from a service-connected or compensable disability. 38 U.S.C.A. § 1310(a) (West 1991). Section 1151 of title 38, United States Code Annotated (West 1991), provides in pertinent part:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization . . . and such injury or aggravation results in additional disability to or the death of such veteran . . . dependency and indemnity compensation under chapter 13 of this title shall be awarded in the same manner as if such disability, aggravation, or death was service connected.

In its decision, the BVA recognized that veteran did have coronary artery disease with angina, but it stated that

> [t]he pertinent medical records do not show that the veteran developed increased heart pathology during the period of hospitalization from October 1986 to February 1987 or thereafter. The terminal hospital records do not show that the veteran sustained a myocardial infarction or otherwise support the conclusion that heart pathology was materially implicated in the veteran's death. . . . [P]rostate cancer was certified to have been the cause of the cardiopulmonary arrest [on veteran's death certificate]. While the prostate cancer was associated with pain, the pain was simply a manifestation of the overwhelming metastatic cancer which was the actual cause of veteran's death.

*Monts*, BVA ____, at 6.

In addition, the BVA determined that veteran's cancer was appropriately treated by the VA during his hospitalization from

October 1986 to February 1987, and that the VA treatment did not cause or hasten the veteran's death. *Id.* The Board stated

[W]e do not dispute the appellant's contention that adequate pain control was not achieved in February 1987 or thereafter. However, the hospital records show that the prostate cancer had metastasized to bone prior to the veteran's October 1986 admission, that appropriate chemotherapy was initially provided, that chemotherapy was then discontinued in accordance with the desires of the appellant and veteran, and that palliative care continued to be provided through the remainder of the period of hospitalization.... [T]he failure to achieve adequate pain control was an unfortunate but likely consequence of the advanced carcinoma.

*Monts,* BVA ___, at 5.

 It is not the function of the Court to decide whether the VA hospitalization resulted in veteran's death; it is the function of the Court to decide whether the factual determination made by the BVA constituted clear error. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). The Court reviews factual determinations of the BVA under the "clearly erroneous" standard of 38 U.S.C.A. § 7261(a)(4) (West 1991). *Green v. Derwinski,* 1 Vet.App. 320, 322 (1991); *Gilbert,* 1 Vet.App. at 52–53. "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Green,* 1 Vet.App. at 322 (quoting *Gilbert,* 1 Vet.App. at 53). After a review of the record we are satisfied that there is a plausible basis for the Board's factual determination that VA hospitalization did not result in the veteran's death. *See Gilbert.*

In addition, we recognize that the August 14, 1990, BVA decision was issued prior to this Court's decision in *Gardner v. Derwinski,* 1 Vet.App. 584 (1991). In *Gardner,* this Court held that "a disability incurred during treatment at a VA hospital is compensable without regard to negligence." *Baritsky v. Principi,* 4 Vet.App. 41, 43 (U.S.Vet.App.1993). In the present case, however, the BVA plausibly determined that no disability resulted from VA hospitalization or treatment. Thus, this Court's decision in *Gardner* is not applicable to the instant case. *See id.*

## III. CONCLUSION

Upon consideration of the record, and the filings of the parties, the Court holds that the BVA did not err in its application of the relevant laws and regulations in reaching its decision, and therefore we AFFIRM the August 14, 1990, BVA decision.