Edward A. CONTRERAS, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–990.

United States Court of Veterans Appeals.

Oct. 8, 1993.

Before STEINBERG, Judge.

## MEMORANDUM DECISION

STEINBERG, Judge:

The appellant, veteran Edward A. Contreras, appeals from a March 28, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying disability compensation under 38 U.S.C.A. § 1151 (West 1991) for disabilities of the right and left knees and spine. In February 1992, the Secretary filed a motion to remand the veteran's claims to the BVA. The Court denied that motion on March 25, 1992. *Contreras v. Derwinski*, 2 Vet.App. 275 (1992) (single-judge order). In July 1992, the Secretary filed a motion to dismiss the appeal for lack of jurisdiction. The Court consolidated this appeal with the appeals in

*Hamilton v. Brown,* No 90–470, and *Powell v. Brown,* No. 91–998, for the limited purpose of resolving issues pertaining to the Court's jurisdiction in each case.

In an April 15, 1993, opinion, the Court en banc held that it did not have jurisdiction, under section 402 of the Veterans' Judicial Review Act, Pub.L. No. 100–687, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C.A. § 7251 note (West 1991)), over the veteran's appeal as to his right-knee disability because the veteran had not filed a valid Notice of Disagreement (NOD) on or after November 18, 1988, with respect to that claim. *Hamilton v. Brown,* 4 Vet. App. 528, 542 (1993). The Court, therefore, dismissed the appeal as to the right-knee claim. However, the Court held that it had jurisdiction over the left-knee and spine claims because the veteran had filed valid NODs on or after November 18, 1988, as to those claims. *Ibid.*

■ On June 17, 1993, the Secretary filed a motion for summary affirmance of the BVA decision as to the left-knee and back claims. On June 25, 1993, the appellant filed an opposition to that motion. Summary disposition is appropriate in this case because it is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet. App. 23, 25–26 (1990). The Court will grant the Secretary's motion and affirm the BVA decision insofar as it denied section 1151 benefits for left-knee and spine disabilities.

### I. Background

The veteran served on active duty in the United States Army from August 1977 to August 1980. R. at 51. In September 1984, he suffered a left-knee injury during the course of his civilian employment. R. at 15, 17. In January 1985, he underwent arthroscopic surgery on the left knee at a private hospital. R. at 14. In October 1985, during a Veterans' Administration (now Department of Veterans Affairs) (VA) alcohol rehabilitation program, the veteran apparently was assigned to scrub a floor with a toothbrush for eight hours. R.

at 41, 145; *Edward A. Contreras,* BVA 91–___, at 5 (Mar. 28, 1991). He asserts that this work caused permanent damage to the surgical repair of his left knee. R. at 145.

In March 1986, the veteran injured his right knee. R. at 36–39, 45. On March 31, 1986, he underwent surgery at a VA hospital to reconstruct the right anterior cruciate ligament and repair a posterior medial capsule tear of the right knee. R. at 45. The VA surgical report stated that the veteran's right patella was "inadvertently fractured on the superior surface" during the surgery (R. at 46) but that there were no other complications (R. at 47). The anesthesiology report indicated that the veteran was anesthetized by means of a spinal needle injected at the L4–5 level of the lumbar spine. R. at 48.

VA medical records in July and August 1986 reflected the veteran's complaints of chronic low back pain and VA physicians' diagnoses of paraspinal muscle spasm and lumbosacral strain. R. at 62, 66–67. In an October 1986 statement, a private physician stated that the veteran's low back pain was "probably secondary to [his] knee problems". R. at 73. The physician also noted that the veteran complained of pain and locking in the left knee, and that the range of motion of the left knee was 120 degrees of flexion and complete extension. The physician concluded that the "[l]eft knee problem is well resolved except occasional locking, according to [the veteran]". *Ibid.* November 1986 VA X rays revealed narrowing of the disc space at the L4–5 level of the spine, and a VA physician diagnosed the veteran as having degenerative joint disease. R. at 99. In a February 1987 treatment report, a VA physician stated that the veteran's back pain was "most likely due to deconditioning [and] poor body mechanics [secondary] to previous knee surgery". R. at 102–03.

In a March 1987 memorandum, a VA orthopedic physician, Dr. William G. Winter, reported that he had spoken with the veteran concerning the veteran's back pain, and that the veteran believed that his back

pain was caused by damage from the improper insertion of the spinal needle during the surgery, and that that damage was compounded when the veteran sat up forcefully during the surgery when his patella was fractured. The physician stated:

> We [the veteran and Dr. Winter] had a long talk about the strong probabilities that his spondylosis predated by years the event of March 31, 1986, and the improbability that a spinal needle (small, sterile, presumably introduced at L2–3 or higher) in some fashion entered the L4–5 disc and led to its narrowing. He certainly told me nothing to suggest infection.

R. at 109–10. At a June 1987 hearing at a VA regional office (RO), the veteran asserted that he had suffered permanent damage to the left knee as the result of his VA rehabilitation therapy in October 1985, and had suffered permanent damage to his spine as the result of the March 1986 VA surgery. R. at 121–27. He offered no medical substantiation for his assertion.

In an October 1987 decision, the RO denied the veteran disability compensation under 38 U.S.C.A. § 1151 for a spinal disability. R. at 130. In a March 1988 letter to the RO, the veteran again asserted that he was entitled to disability compensation under section 1151 for his left-knee and spine disabilities. R. at 143–44. With respect to the spine disability, he asserted that the spinal needle used in the March 1986 VA surgery had "punctured the disc pad at the L4–5 disc space" and "left the disc pad leaking fluid", and that when his patella was fractured during that surgery, he "sat up[,] and from the right leg being elevated during the operation, ... great strain [was placed] on [his] spine, causing the punctured disc pad to spurt fluid, [and] leaving [him] with a permanently herniated disc at the L4–5 disc". R. at 146, 150. He further claimed that Dr. Winter had stated that the veteran's spinal anesthesia was presumably introduced at the L2–3 level, but that the VA anesthesiology report indicated that the spinal needle was introduced at the L4–5 level, where the veteran's back problem developed. With respect to the left-knee disability, the veteran stated that he had developed left-knee problems immediately after having been required by VA personnel in October 1985 to scrub a floor for eight hours on his hands and knees. R. at 149–50.

In a July 14, 1989, decision, the RO denied the left-knee and spine claims, concluding that "[t]here is no evidence in file that as a result of hospitalization, medical or surgical treatment, exam or vocational rehabilitation training any additional disability of either knee or of the back resulted." R. at 165–66. The veteran filed a valid NOD as to that decision in September 1989. R. at 178; *Hamilton, supra.*

In the March 28, 1991, decision here on appeal, the Board denied the veteran's left-knee and spine claims. The Board stated:

> We have taken into consideration the veteran's contentions regarding the nature and etiology of his claimed injuries, and the various difficulties associated therewith. However, while it would appear that, in October 1985, during a period of official VA alcohol rehabilitation, the veteran was, in fact, required to scrub a floor, there exists no evidence that the particular episode resulted in any damage to the veteran's left knee.... Nor has it been shown that anesthesia administered during the course of the [1986 VA] surgery was in any way responsible for the narrowing of the disc space between the 4th and 5th lumbar vertebrae.... There is absolutely no evidence of record that the intervertebral space was injured during the administration of the spinal anesthesia.

*Contreras,* BVA 91–___, at 5.

Although the appellant raised the issue of his left-knee disability in his statement of issues filed in this Court, his argument in his brief on appeal and opposition to the Secretary's motion for summary affirmance is limited to the spine claim. With respect to that claim, he reasserts the argument presented to the Board that the spinal needle inserted at the L4–5 level during the 1986 VA surgery was inserted too far, penetrating the intervertebral space, and that the fracture of his patella caused him to sit

up during the surgery, which in turn caused the nucleus pulposus to drain from the intervertebral space, resulting in a narrowing of the L4–5 intervertebral space and a permanent spinal disability. In his motion for summary affirmance, the Secretary asserts that there is no competent evidence of record to support a conclusion that the veteran's back disability resulted from the VA surgery or that the veteran's left-knee disability resulted from his VA rehabilitation treatment, and that, therefore, the BVA's factual findings are not clearly erroneous.

## II. Analysis

Pursuant to section 1151, the Secretary is required to pay disability compensation for disability, aggravation of disability, or death, to a veteran "in the same manner as if such disability, aggravation, or death were service-connected", under the following circumstances:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation under chapter 31 of this title, awarded under any of the laws administered by the Secretary, or as the result of having submitted to an examination under any such law, and not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran....

38 U.S.C.A. § 1151 (West 1991); *see Gardner v. Derwinski*, 1 Vet.App. 584, 586–88 (1991) (en banc), *aff'd* 5 F.3d 1456, (Fed.Cir. 1993). In *Gardner*, decided while the instant appeal was pending before this Court, this Court invalidated, as inconsistent with section 1151, a VA regulatory provision in 38 C.F.R. § 3.358(c)(3) (1991), which had provided that compensation was payable under the circumstances described in section 1151 only where the disability resulted from "carelessness, negligence, lack of proper skill, error in judgment, or similar instances of indicated fault on the part of [VA]" or "an 'accident' (an unforeseen, un-

toward event)". *Gardner*, 1 Vet.App. at 588.

In his February 1992 motion for remand, the Secretary noted that the BVA had relied in part on the regulatory provision invalidated in *Gardner* and asserted that remand was therefore required for readjudication in light of *Gardner*. In its March 1992 order denying that motion, the Court noted that because the Board had concluded, without regard to the question of VA fault, negligence, or accident, that the veteran's left-knee and spine disabilities had not resulted from VA surgery or treatment, remand for readjudication under *Gardner* would not change the outcome of the decision on appeal. *Contreras*, 2 Vet. App. at 275.

■ Pursuant to 38 U.S.C.A. § 5107(a) (West 1991), "a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting *evidence* sufficient to justify a belief by a fair and impartial individual that the claim is well grounded". (Emphasis added.) A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). Although the claim need not be conclusive, it must be accompanied by supporting evidence sufficient to justify a belief by a fair and impartial individual that the claim is plausible. *See Tirpak v. Derwinski*, 2 Vet. App. 609, 610 (1992). "[W]here the determinative issue involves medical causation or a medical diagnosis, competent medical evidence to the effect that the claim is 'plausible' or 'possible' is required." *Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993). The determination whether a claim is well grounded is a conclusion of law, which the Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Grottveit*, 5 Vet.App. at 92.

■ In this case, the veteran has failed to submit any medical evidence that his current left-knee and spine disabilities resulted from VA surgery or treatment. His own statements are not competent evidence of medical causation. *See Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992) (lay wit-

ness not competent to offer evidence that requires medical knowledge). Therefore, the claim is not well grounded as a matter of law. *See Grottveit, supra.*

The Court stresses that it is not making any determinations with respect to the credibility of the veteran's assertions as to what transpired during the course of his October 1985 VA rehabilitation program or his March 1986 VA surgery. However, even accepting his assertions as true, he has not submitted any evidence that could plausibly establish that those incidents caused his current left-knee and spine disabilities. Absent such evidence of a causal relationship, the veteran has not submitted a well-grounded claim, as a matter of law, for section 1151 benefits for those disabilities. *See Grottveit, supra.*

Because the appellant failed to submit a well-grounded claim under 38 U.S.C.A. § 5107(a), the VA was not required to carry his claim to full adjudication and any error in the subsequent administrative proceedings as to that claim—such as the Board's reliance on the regulatory provisions invalidated in *Gardner*—is not prejudicial to the appellant. *See* 38 U.S.C.A. § 7261(b) (West 1991); *Sanchez v. Derwinski,* 2 Vet.App. 330, 333 (1992); *Kehoskie v. Derwinski,* 2 Vet.App. 31, 34 (1991); *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991); *Thompson v. Derwinski,* 1 Vet. App. 251, 254 (1991); *cf. Grottveit,* 5 Vet. App. at 93 (where BVA has erroneously adjudicated a claim which the Court determines was not well grounded, the decision of the Board must be vacated and the matter remanded with directions to vacate the RO decision); *but cf. Green (John) v. Brown,* 5 Vet.App. 83, 84 (1993) (Kramer and Steinberg, JJ., dissenting to denial of en banc review) (noting, at note 2, page 86, long line of Court precedent holding where BVA had erroneously adjudicated a claim which the Court determines was not well grounded that BVA denial of the claim on the merits is not prejudicial to the veteran and should be affirmed by the Court).

### III. Conclusion

Upon consideration of the record and the pleadings of the parties, the Court holds

that the veteran has not demonstrated that the BVA committed error warranting remand or reversal under 38 U.S.C.A. §§ 5107(a), 7252(a), 7261 (West 1991). The Court, therefore, grants the Secretary's motion for summary affirmance and summarily affirms the March 28, 1991, BVA decision.

AFFIRMED.