KASOLD, Chief Judge,
dissenting:
Mr. Mountford is a U.S. Air Force veteran, service connected for schizophrenia since 1978; he has had a total disability rating since 1997. He pled nolo contende-re to attempted burglary in 1994 and was placed on probation. He failed to comply with all of the probationary requirements and a warrant for his arrest issued in September 1994. The warrant remained outstanding for over nine years, despite *451 Mr. Mountford’s travels into and out of the country in relative freedom. The Board found that Mr. Mountford had no knowledge of the warrant, and the record reflects that upon notice from VA that a warrant was outstanding and that he should explain why his VA benefits should not be recouped and stopped, Mr. Mount-ford promptly turned himself in and settled the matter with the state. Subsequently, the Secretary notified Mr. Mountford that his benefits were fully restored. For reasons unexplained, and without following regulation, the Secretary initiated action two years later to recoup over $63,000 for a period of time that Mr. Mountford received benefits and when neither he nor VA was aware that he had a warrant outstanding, culminating in this appeal.
Accepting arguendo the majority’s general rejection of Mr. Mountford’s specific arguments, and recognizing the general rule that “refusal to consider arguments not raised is a sound prudential practice,” I nevertheless note and agree with the observation that courts have an “obligation to decide according to the law,” and therefore, “there are times when prudence dictates the contrary.” Davis v. United States, 512 U.S. 452, 464-65, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (Scalia, J., concurring); see also Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (“When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.”); Carducci v. Regan, 714 F.2d 171, 177 (D.C.Cir.1983) (noting that although courts are essentially “arbiters of legal questions presented and argued by the parties before them [,] ... not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research”).[7]
This appeal involves a question of jurisdiction, as well as obvious statutory and regulatory errors prejudicial to Mr. Mountford that flow from his general contention that the Board wrongfully applied section 38 U.S.C. § 5313B. Because interpretation of section 5313B is a matter of first impression for the Court and the errors in the Board’s decision are patent and prejudicial, they should have been addressed by the Court. See Davis and Carducci, both supra. The errors are threefold.
1. Retrospective Application. There is nothing in section 5313B that permits the Secretary to recover benefits he already has paid. Rather, section 5313B prohibits the Secretary from making payments to veterans who are fugitive felons, once the Secretary is aware that a veteran is a fugitive felon. The prohibition is prospective, not retrospective; it is dependent on the Secretary having knowledge that a person is a fugitive felon. See 38 U.S.C. § 5313B(a) (providing in pertinent part that “[a] veteran who is otherwise eligible for a benefit specified in subsection (c) may not be paid or otherwise provided such benefit for any period during which *452 the veteran is a fugitive felon” (emphasis added)); see also United States v. LaBonte, 520 U.S. 751, 757, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997) (“[W]e assume that in drafting this legislation, Congress said what it meant.”).
The legislative history amply supports the prospective nature, and plain meaning, of the legislation and the action authorized therein. See Gardner v. Derwinski, 1 Vet.App. 584, 586-87 (1991) (plain meaning controls unless it demonstrably conflicts with legislative intent). Before section 5313B was enacted into law, there was no provision “to prevent veterans who are fugitives from justice from receiving VA benefits.” S. REP. NO. 107-86, at 17 (2001). Section 5313B is “designed to cut off the means of support that allows [sic] fugitive felons to continue to flee.” Id. (emphasis added). Retrospective benefit recovery, as the Board and the majority permit, has nothing to do with cutting off a fugitive’s means to continue to flee. And large, retroactive recoveries, as in this case, will impact a veteran’s future benefits long after his fugitive felon status ends. Nothing in section 5313B supports such action.
Comparison to 42 U.S.C. § 1382(e)(4)(A), the Social Security statute upon which section 5313B is based, is instructive. The Social Security statute is drafted in terms of when a person is ineligible to receive Social Security benefits. See 42 U.S.C. § 1382(e)(4)(A) (“No person shall be considered an eligible individual ... with respect to any month if during such month the person is ... violating a condition of probation or parole imposed under Federal or State law.”). In contrast, the veterans benefits statute, section 5313B, is drafted in terms of prohibiting VA from making payments; it does not define periods of ineligibility. See 38 U.S.C. § 5313B (“A veteran who is otherwise eligible [ ] may not be paid.... ”). The legislative history clearly demonstrates that Congress considered the Social Security legislation, which contains the “ineligibility” construction, but chose instead to prohibit payment from the Secretary, which intuitively requires knowledge on the Secretary’s part that a veteran is a fugitive felon before payment can be stopped. The Board’s interpretation ignores this obvious distinction between the Social Security and veterans benefits statutes, and permits the Secretary to recover benefits from Mr. Mountford as though section 5313B defined the eligibility of a veteran to receive benefits as opposed to prohibiting the payment of benefits once the Secretary is aware a veteran is a fugitive felon. Essentially, despite the significantly different statutory approaches, the majority treat section 5313B as a duplicate of 42 U.S.C. § 1382(e)(4)(A). It is not. See LaBonte, supra.[8]
2. “Fugitive.” Noting that section 5313B(b)(l) provides that “a fugitive felon is ‘a person who is a fugitive by reason of *453 ... violating a condition of probation or parole imposed for commission of a felony-under Federal or State law,’ ” the majority conclude that “[t]he plain language of the statute very simply defines a ‘fugitive felon’ as one who violates the conditions of probation.” Ante at 448. This ignores, however, the fact that Congress chose to describe a fugitive felon in terms of the reason one is a fugitive, as opposed to redefining the plain and natural meaning of the word “fugitive.” Otherwise stated, although one might become a fugitive felon “by reason of’ violating probation, there remains the overarching requirement that one must nevertheless be a “fugitive” to be deemed a “fugitive felon.” This invokes considerations of due process such as notice that one is wanted.
Indeed, a fugitive is “[a] person who flees or escapes; a refugee.” Black’s Law Dictionary 741 (9th ed. 2009); see also Webster’s II New College Dictionary 451 (3rd ed. 2001) (defining “fugitive” as “[fjleeing, as from the law”). It is self-evident that one must have some knowledge of being wanted in order to be fleeing, and this is the understanding encoded in other provisions of Federal law. See, e.g., 28 U.S.C. § 2466 (entitled “fugitive disentitlement,” and providing that a person forfeits the use of the U.S. courts if he, inter alia, leaves the jurisdiction of the United States “after notice or knowledge of the fact that a warrant or process has been issued for his apprehension”); 18 U.S.C. § 921(a)(15) (“The term ‘fugitive from justice’ means any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding.”).[9]
Moreover, the Veterans Benefits Administration’s Adjudication Procedures Manual (M21-1 MR) interprets “fugitive” consistent with this natural meaning. According to the M21-MR, an outstanding arrest warrant raises only a presumption that the beneficiary is a fugitive felon for VA purposes. M21-MR, pt. X, ch. 16, 2. Indeed, when a beneficiary denies ever having received notice of a warrant, the RO is instructed to contact the Office of Inspector General (OIG), whose duties are described as follows:
The OIG fugitive felon coordinator will generally recommend that benefits payments not be discontinued if the evidence establishes that the beneficiary was unaware of the warrant or made good faith attempts to clear the warrant as soon as he/she knew or should have known of the existence of the warrant.
Id. at 12 (emphasis added).
Here, it is undisputed that the Board found that Mr. Mountford was unaware that he was the subject of an outstanding arrest warrant and that he promptly cleared the warrant when he learned about it. By the plain meaning of the term “fugitive,” he was not a “fugitive felon.” And, by the specific terms of the M21-MR, his VA benefits should not have been recouped.
*454 3. Grave Procedural Error and Jurisdiction. It is well established that a decision becomes final after one year if a Notice of Disagreement is not filed. Percy v. Shinseki, 23 Vet.App. 37, 41 (2009) (citing 38 U.S.C. § 7105(b)(1)). Favorable final decisions are revised only when they contain clear and unmistakable error, an error long described by this Court as being an “undebatable” error. Russell v. Principi, 3 Vet.App. 310, 313-14 (1992) (en banc) (“The words ‘clear and unmistakable error’ are self-defining. They are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made.”); see also 38 U.S.C. § 5109A(a) (“A decision by the Secretary under this chapter is subject to revision on the grounds of clear and unmistakable error.”). Moreover, although the Court has not addressed whether clear and unmistakable error is a jurisdictional requirement to reversing an otherwise final decision on a claim, the issue is so analogous to the fact that new and material evidence is a jurisdictional requirement for the Board to reopen a claim, that it should be addressed. See e.g., Barnett v. Brown, 83 F.3d 1380, 1383 (Fed.Cir.1996) (holding that pursuant to 38 U.S.C. 5108, “the Board does not have jurisdiction to consider a claim which it previously adjudicated unless new and material evidence is presented, and before the Board may reopen such a claim, it must so find.”); compare 38 U.S.C. § 5108 (new and material evidence required to reopen a claim) with 38 U.S.C. § 5109A (clear and unmistakable error required to revise RO decisions) and § 7111 (same as to Board decision).
In the decision on appeal, the Board acknowledged that the regional office cleared Mr. Mountford of fugitive felon status in July 2004 and reversed any re-coupment action, but then later, without explanation, adjudicated the matter again in August 2006, this time unfavorably. The record reflects that neither the August 2006 decision nor the Board decision on appeal gave any consideration to the fact that clear and unmistakable error was required to overturn the 2004 decision.
Given the natural meaning of “fugitive,” the fact that Mr. Mountford was not aware a warrant was out for his arrest and took prompt corrective action upon being told of the warrant, the prospective nature of section 5313B in authorizing benefit payments to be stopped, and the Secretary’s own M21-MR guidance that recoupment is not warranted if the veteran was not aware that he was the subject of an outstanding warrant, as is the ease here, the 2004 decision cannot reasonably be said to be the product of clear and unmistakable error.[10]
*455 Although Mr. Mountford’s counsel stated at oral argument that she did not raise this issue in her briefing because she thought this procedural error was harmless, her thinking is not dispositive. For one, as noted above, whether or not there was clear and unmistakable error in the July 2004 RO decision raises a question of jurisdiction, an issue that cannot be waived. Jarrell v. Nicholson, 20 Vet.App. 326, 331 (2006) (en banc). Second, there is no indication this issue was discussed with her client. The assertion of a veteran’s counsel cannot always control the outcome. See Janssen v. Principi, 15 Vet.App. 370, 374 (2001) (counsel’s waiver of a guaranteed right is effective if the appellant has knowledge of the right and voluntarily intends to relinquish that right); Jarrell, 20 Vet.App. at 338 (Hagel, J., dissenting) (to be an effective waiver of a right, a claimant must have knowledge of a right and must intend voluntarily and freely to relinquish or surrender that right); see also Davis, supra. Moreover, it is the Court’s statutory duty to “take due account of prejudicial error.” 38 U.S.C. § 7261(b)(2); Newhouse v. Nicholson, 497 F.3d 1298, 1301 (Fed.Cir.2007) (“[T]he Veterans Court [is] required to examine whether any errors by VA were prejudicial and [ ] it must do so based on the administrative record.”); Parker v. Brown, 9 Vet.App. 476, 481 (1996) (“ ‘Prejudice ... means injury to an interest that the statute, regulation, or rule in question was designed to protect.’ ” (quoting Intercargo Ins. Co. v. United States, 83 F.3d 391, 396 (Fed.Cir.1996))). In the heat of *456 aggressive oral argument, and given the obvious prejudice associated with adjudicating a matter under a far lesser standard than authorized by regulation, counsel’s oral argument statement should not be accepted as a knowing waiver of the veteran’s rights.
For these reasons, I respectfully dissent.

. My colleagues definitively state that my dissent addresses issues “not central to the main holding”. Ante at 448. But making such a statement does not make it so. The central holding is that section 5313B authorizes the Secretary to retroactively take benefits from a veteran who has a warrant out for his arrest, even when the Board finds that the veteran had no knowledge that a warrant was outstanding, and even when the veteran takes prompt action to clear the warrant when he learns of the warrant. I leave to the reader to determine if I address issues "central to the main holding.”

. The suggestion of my colleagues that because the Secretary is authorized by statute to recover overpayments, there was no need to stale such authority in section 5313B, misses the point. Ante at 450 n. 6. There is no dispute over the Secretary’s authority to recover an overpayment. But there has to be an overpayment. Congress quite clearly rejected the legislative approach taken with Social Security benefits, which is to deny eligibility to a person in a fugitive felon status. Had Congress taken that approach with regard to veterans, payments made while a veteran was a fugitive felon would constitute an overpayment because the veteran would not be eligible to receive them. Instead, when addressing the same issue with veterans, Congress placed the burden on the Secretary to stop payments whenever the Secretary learned that a veteran was a fugitive felon. Until the Secretary learns that a veteran is a fugitive felon, it cannot be said that the Secretary has violated the law, and thus there has been no overpayment to be recovered.

. My colleagues also definitively state that "[njowhere in the statute (section 5313B(b)(1)) or its legislative history is the slightest suggestion that one must have the prerequisite knowledge imposed by the dissent.” Ante at 448 (emphasis added). But, again, stating it does not make it so. I leave to the reader to determine whether the use by Congress of the word “fugitive” was done without an understanding of its well-accepted meaning, or whether Congress intended to alter the commonly recognized meaning from English-language dictionaries. And I query, if there is not even the slightest suggestion in legislation or legislative intent that knowledge of an outstanding warrant is an element of being a fugitive felon, and I am imposing it in the first instance, why does the VA Adjudication Procedures Manual state that such knowledge is an element? See M21-1MR, pt. X, ch. 16.2.

. My colleagues's suggestion that the RO may have reinstated Mr. Mountford’s benefits based upon a lack of information regarding the date the warrant was served is pure conjecture, without any basis in the record. Ante at 445-46. Nothing in the record on appeal suggests confusion by the RO, as opposed to implementation of the very concept now contained in the M21-MR that benefits not be taken retroactively if the veteran was not aware he was the subject of an outstanding warrant. Even assuming confusion by the RO, it remains unexplained how a lack of information regarding the date Mr. Mount-ford was served with the warrant could have been a basis for reinstating benefits and two years later reversing that reinstatement. The date appears to be relevant only to when Mr. Mountford had knowledge that a warrant issued for his arrest, which would support a revocation of benefits back only to that date.
Additionally, my colleagues state that Mr. Mountford does not dispute any of the "facts” laid out in the Court's majority opinion. Ante at 445-46. Such a statement is presumptive in that Mr. Mountford not only has not had an opportunity to review the facts laid out by the majority, but unwarranted liberty has been taken with regard to what might be a "fact.”
*455 For example, my colleagues state as a fact that the Secretary did not learn until July 2006 that Mr. Mountford had been served with a warrant in April 2004. But, the cite referenced by my colleagues as support for this "fact” states nothing about this being the first notification to the Secretary. R. at 162. Additionally, my colleagues definitively state that no evidence of the warrant being cleared was submitted to the RO with Mr. Mount-ford's American Legion assisted June 2004 submission seeking reinstatement, but the record on appeal does not state what documents were or were not attached thereto. Moreover, the record on appeal is not the entire record, see Vet.App. R. 28.1 (requiring a record of proceedings to be submitted for review, in lieu of the entire record), and when the Board has not addressed a matter and a party has not otherwise admitted a fact, there is no proper basis for an appellate court to state a fact that is not clear on its face in the record on appeal; to do that, the entire record would have to be reviewed, see 38 U.S.C. § 7261(b) (providing for judicial review on the record). Accordingly, remand for the Board to address a potentially important issue is appropriate in such circumstances. See Maggitt v. West, 202 F.3d 1370, 1377-78 (Fed.Cir.2000) (holding that the Court has the discretion to hear or remand legal issue raised for the first time on appeal). Furthermore, the submission by a congressionally authorized veterans service organization that explicitly states a warrant has been cleared is evidence; it may not be accepted by the fact-finder, but it is evidence. Flynn v. Brown, 6 Vet.App. 500, 504 (1994) (holding that the hearsay rule does not apply to the VA claims adjudication process); see also R. at 290. And, nothing in the record on appeal indicates the representation of the American Legion was not accepted by the RO or that the warrant was not cleared; indeed, the evidence of conviction and time served is evidence that the warrant was resolved.
For whatever reason, my colleagues also state that "Mr. Mountford was acutely aware of the conditions of his probation, including his duties to pay supervisory fees and submit monthly reports to his probation officer. He certainly was advised and understood the consequences of his failure to comply with the terms and conditions of his probation.” Ante at 448 (emphasis added). No citation to the record on appeal is provided for such definitive findings of Mr. Mountford's awareness and understanding, and no such finding was made by the Board. A guilty finding presumes the necessary mens rea, but that is a far ciy from “acute awareness” and being "advised” of and having “understood” consequences. Indeed, the record on appeal reflects that Mr. Mountford is 100% disabled for schizophrenia.