Karen B. MINTZ, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–1161.

United States Court of Veterans Appeals.

March 8, 1994.

8. *King v. St. Vincent's Hospital,* — U.S. —, — n. 9, 112 S.Ct. 570, 574 n. 9, 116 L.Ed.2d 578 (1991).

278

Karen B. Mintz, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Peter M. Donawick, Dept. of Veterans Affairs, Office of Gen. Counsel, Washington, DC, were on the motion for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Judges.

FARLEY, Judge:

In a single-judge memorandum decision dated September 28, 1993, this Court vacated and remanded the May 19, 1992, decision of the Board of Veterans' Appeals (BVA or Board). The Secretary moved for reconsideration of the Court's decision on October 26, 1993. The Court granted the Secretary's motion on December 23, 1993, vacated the memorandum decision, and referred this matter to a panel. For the reasons set forth below, the Court will affirm the May 19, 1992, decision of the Board.

## I. Factual and Procedural Background

Appellant is the widow of veteran Jerry W. Mintz, who died on August 28, 1988. The Death Certificate listed the immediate and sole cause of death as "Advanced Coronary Artery Disease"; no other underlying causes or contributing conditions were listed. R. at 85. At the time of his death, the veteran was service connected for post-operative residuals of a missile wound of the right hip with total hip replacement, evaluated as 70% disabling, and residuals of a penetrating wound to the bladder, evaluated as 10% disabling; the combined service-connected rating was 70%. R. at 60. In addition, the veteran had received a total disability rating based on individual unemployability, effective June 16, 1970, which had remained in effect until his death. *Id.;* R. at 45–46, 48.

In an October 6, 1988, rating decision, the VA Regional Office (RO) determined that the cause of the veteran's death was neither itself service connected nor shown to have been related to any service-connected disability. R. at 90. The rating decision did establish basic entitlement to Dependency and Indemnity Compensation (DIC) and basic eligibility for educational benefits under Chapter 35. *Id.* The VA also authorized $355.00 for the veteran's burial expenses, which included $55 for transportation. R. at 87–88; *see also* 38 U.S.C. §§ 2302; 2308.

By letter dated April 24, 1989, appellant was advised that her application for DIC was approved. R. at 95–96. The following month, appellant inquired of the VA whether her husband's death had been service connected. R. at 98. In a May 30, 1989, letter, the VA informed appellant that

> Your husband's death was not service connected. However, due to his total disability evaluation being in effect for 10 continuous years immediately preceeding [sic] his death, Dependency and Indemnity Compensation benefits are payable. You were notified of this by our letter dated April 24, 1989.
>
> If you disagree with our decision, you have one year from the date of our letter dated

April 24, 1989, to file a Notice of Disagreement [NOD].

R. at 99. On March 12, 1990, appellant filed an NOD contending that her husband's death resulted from lack of proper treatment at a VA medical center (VAMC). R. at 100. She requested a Statement of the Case (SOC) and additional time in which to formulate her appeal. R. at 99–100.

On June 6, 1990, Robert P. Brewer, Jr., an assistant state service officer with the North Carolina Department of Administration, Division of Veterans Affairs, wrote to the Winston–Salem RO on appellant's behalf:

> The claimant did receive notification of DIC entitlement based on [the] veteran[']s having permanent and total disabling service[-]connected conditions for at least ten years immediately prior to death, however, the claimant has stated she specifically wants the VA to further pursue[,] issuing her [an SOC], and appealing the issue that service connection for the cause of death should be established in that the medications prescribed, and provided to the veteran by VAMC for his service[-]connected disabilities could have contributed to, and/or hastened his untimely death. . . .

R. at 115. In a rating decision dated June 25, 1990, the RO determined, with reference to the October 1988 denial of service connection for the veteran's death, that the NOD was "not accepted" because it was not filed within the one-year period established by 38 U.S.C. § 7105(b)(1) and (c). R. at 117. With respect to what it described as appellant's "[r]eopened claim for s[ervice] c[onnection] for cause of vet's death," the RO concluded that "[s]ince widow has established entitlement to DIC under one law, consideration of DIC under 38 U.S.C. [§ 1151] 'as if' death were service connected is not in order." R. at 118. In response, appellant filed a statement in support of claim in which she requested copies of the October 6, 1988, rating decision and any additional rating sheets involving her DIC benefits because she was "formulating [her] appeal." R. at 119.

In an October 11, 1990, letter, appellant was advised that the "evidence does not establish that the veteran's death was due to a service[-]connected disability." R. at 120.

Appellant was informed that her DIC benefits would continue due to the total disability rating having been in effect for ten years and advised of her "procedural and appeal rights." *Id.* On November 2, 1990, appellant noted her exception and requested that the VA issue an SOC so that she could proceed with her appeal. R. at 122. The VA forwarded an SOC in November 1990 (R. at 124–27), and appellant perfected her appeal to the Board, again asserting that the veteran died as a result of the medication which the VA prescribed in connection with its treatment of appellant's service-connected disabilities. R. at 129. The Winston–Salem RO conducted a hearing on February 28, 1991, at which appellant and her brother, David Bates, testified concerning appellant's claim that the veteran's death had resulted from improper medical treatment by the VA. R. at 130–43. Appellant expressed her disagreement with the VA's finding that the veteran's death was non-service-connected. R. at 131, 143. When testifying on appellant's behalf, Mr. Bates stated: "We feel that his death was untimely and that it was the direct [result] of his care and medications that he received from the wounds that he had sustained in Vietnam." R. at 138. A VA hearing officer issued a decision on March 15, 1991, in which he concluded that the evidence did not demonstrate that the veteran's service-connected disabilities either "materially contributed to or hastened his death" and affirmed the "prior determination that service-connection is not in order for cause of death." R. at 153.

In a July 3, 1991, decision, the Board remanded appellant's claim in order for the RO to obtain the veteran's VA treatment records for two years prior to his death, and to allow appellant to submit additional evidence in support of her claim that the veteran's service-connected disabilities or the treatment which he received for these disabilities "caused or contributed substantially or materially to the cause" of his death. R. at 161–63. The Board stated that the purpose of the remand was to "procure clarifying data and to aid the appellant in the prosecution of her appeal." R. at 162.

Pursuant to the BVA remand, the RO obtained the veteran's treatment records from the VAMCs in Salisbury and Durham, North Carolina, and requested that appellant submit medical evidence to support her claim. R. at 164–99. After reviewing the VAMC records, which revealed that the veteran had suffered a myocardial infarction and was treated for right knee and right hip disabilities, the RO on December 6, 1991, continued the denial of her claim. R. at 200.

In the May 19, 1992, decision currently on appeal, the Board refused to reopen appellant's claim of entitlement to service connection for the cause of the veteran's death on the ground that she had not submitted new and material evidence to warrant such action. In addition, like the RO in its June 25, 1990, rating decision, the Board declined jurisdiction with respect to appellant's claim that her husband's death resulted from treatment at the VAMC. The Board stated that the "issue of entitlement to death benefits under the provisions of 38 U.S.C. § 1151 (1992) is not before the Board. We must point out that a favorable determination as to that decision would result in *no benefit* to the appellant." R. at 2 (underlining in original).

## II. New and Material Evidence

■ The October 6, 1988, rating decision denying service connection for the cause of the veteran's death became final in light of appellant's failure to file an NOD "within one year from the date of mailing of notice of the result of initial review or determination." 38 U.S.C. § 7105(b)(1), (c); *Person v. Brown,* 5 Vet.App. 449, 450 (1993) (failure to timely appeal an RO decision within one-year period renders the decision final). A final decision under 38 U.S.C. § 7105(c) cannot be reopened and reconsidered by the Secretary unless "new and material evidence" is presented. *See* 38 U.S.C. § 5108; *Suttmann v. Brown,* 5 Vet.App. 127, 135 (1993) (applying § 5108 for reopening final claims to RO decisions rendered final by operation of § 7105(c)). Upon a finding of new and material evidence, the Secretary must reopen a previously disallowed claim. *Spencer v. Brown,* 4 Vet.App. 283, 286–87 (1993); *see also* 38 U.S.C. § 7104(b). Evidence is new when not "merely cumulative of other evidence on the record," and material when both "relative to and probative of the issue at hand" and of sufficient weight to present a reasonable possibility that the new evidence, when viewed in conjunction with the old, will change the disposition of the claim. *Sklar v. Brown,* 5 Vet.App. 140, 145 (1993); *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991); *see also Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991).

■ Since the October 6, 1988, RO decision, appellant has submitted the veteran's medical records, including the autopsy report; statements and testimony from herself, her brother, and the veteran's mother; and the treatment records from the VAMCs in Salisbury and Durham, North Carolina, in support of her claim for direct service connection for the cause of the veteran's death. R. at 102–14, 130–51, 167–99. None of this evidence is material to the issues of whether the veteran's advanced coronary artery disease manifested itself during service or within the one-year presumptive period following service or whether the disease was due in any way to either of the veteran's previously-determined service-connected conditions. Moreover, there exists no medical evidence of record linking the veteran's service-connected post-operative residuals of missile wound of the right hip with total hip replacement and residuals of a penetrating wound to the bladder, to the cause of the veteran's death. Lay persons are not competent to render testimony concerning medical causation. *See Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993). Similarly, "lay assertions of medical causation . . . cannot serve as a predicate to reopen a claim under [38 U.S.C. § 5108]". *Moray v. Brown,* 5 Vet.App. 211, 214 (1993). Therefore, appellant has not submitted new and material evidence, and the BVA was correct in refusing to reopen her claim.

## III. The Board's Declination of Jurisdiction Over Appellant's Claim for Service Connection Under 38 U.S.C. § 1151

■ At the outset, we must note that the Court finds no merit in the Secretary's argument that this appeal does not present the Court with a reviewable case or controversy.

*See* Secretary's Motion, at 6. Appellant has in essence asserted that the Board's declination of jurisdiction was unlawful and its statutory interpretation of 38 U.S.C. § 1151 is at least questionable, and at most, incorrect. "[T]o the extent necessary to its decisions," this Court has jurisdiction pursuant to 38 U.S.C. § 7261 to

> (1) decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary;
>
> . . . . .
>
> (3) hold unlawful and set aside decisions, findings, ... conclusions, rules and regulations issued or adopted by the Secretary, the [BVA], of the Chairman of the Board found to be—
>
> . . . . .
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right;

38 U.S.C. § 7261(a)(1), (a)(3)(C). Thus, the Secretary's refusal to exercise jurisdiction and the competing interpretations of § 1151 forwarded by the parties clearly presents a case or controversy within the purview of the Court's jurisdiction. *See Mokal v. Derwinski,* 1 Vet.App. 12 (1990).

 Appellant requested that the BVA review the refusal of the RO to decide if, as she alleged, her husband had died as a result of improper treatment provided by the VA. The Board specifically stated that it "declines jurisdiction of the issue in the absence of some ascertainable benefit which could be awarded to the appellant." R. at 5. Although the choice of the word *"decline"* by the BVA could be construed as implying that it has discretion to decide whether or not to exercise jurisdiction, there is no extant statute or judicial decision which stands in support of such a proposition. Indeed, Congress has decreed that "[t]he Secretary *shall decide* all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a) (emphasis added). Properly phrased, therefore, the question is not whether the BVA erred when it declined jurisdiction, but whether the BVA lacked jurisdiction because a decision on appellant's claim would not "affect[ ] the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans."

Appellant's claim is premised upon 38 U.S.C. § 1151, which provides in pertinent part:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment ... not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation *under this chapter* [chapter 11] and dependency and indemnity compensation *under chapter 13 of this title* shall be awarded in the same manner *as if* such disability, aggravation, or death were service-connected.

38 U.S.C. § 1151 (emphasis added).

The BVA in its May 19, 1992, decision declined jurisdiction to review appellant's § 1151 claim, concluding that such review would be fruitless since even a favorable ruling "would result in *no benefit* to the appellant" in that she was already receiving DIC benefits. The rationale behind this statement may be gleaned from a brief review of the relevant statutory provisions. In addition to benefits for service-connected disability, chapter 11 of title 38 governs death compensation for those veterans' deaths occurring before January 1, 1957. *See, e.g.,* 38 U.S.C. § 1121 (basic entitlement for death during wartime); 38 U.S.C. § 1141 (basic entitlement for death during peacetime); 38 U.S.C. § 1122 (monthly rates for death compensation); 38 U.S.C. § 1142 (providing § 1122 rates based on § 1141 entitlement). Chapter 13 provides dependency and indemnity compensation (DIC) to survivors eligible for chapter 11 death compensation, and to the eligible survivors of a veteran whose death is service connected and occurred after December 31, 1956. *See* 38 U.S.C. §§ 1310, 1316. Pursuant to 38 U.S.C. § 1318, DIC will also be paid to eligible survivors if, at the

time of death, the veteran was receiving, or had been eligible to receive, compensation for

a service-connected disability that either—

(1) was continuously rated totally disabling for a period of 10 or more years immediately preceding death; or

(2) if so rated for a lesser period, was so rated continuously for a period of not less than five years from the date of such veteran's discharge or other release from active duty[,]

and if the death was not the result of the veteran's own willful misconduct. 38 U.S.C. § 1318(b)(1)–(2).

Chapter 23 provides for the payment of certain burial and funeral benefits to the appropriate person upon the death of a veteran under specified circumstances. Under § 2302(a), the Secretary "may pay a sum not exceeding $300" to cover funeral and burial expenses for a deceased veteran who at the time of death was in receipt of compensation or a pension. If a veteran dies in a VA facility in which he or she was admitted in compliance with the parameters of § 2303(a), the Secretary "shall pay the actual cost (not to exceed $300) of the burial and funeral." 38 U.S.C. § 2303(a)(1). If, however, the veteran's death is the result of a service-connected disability,

the Secretary ... shall pay the burial and funeral expenses incurred in connection with the death of the veteran in an amount not exceeding the greater of (1) $1,500, or (2) the amount authorized ... in the case of a Federal employee whose death occurs as the result of an injury sustained in the performance of duty.

38 U.S.C. § 2307. Any amount paid under § 2307 is in lieu of burial benefits paid under § 2302 or § 2303. *Id.* Finally, pursuant to 38 U.S.C. § 2308, if a veteran's death resulted from a service-connected disability or if the veteran had been in receipt of disability compensation, the cost of transportation to a national cemetery may be paid in addition to § 2303 or § 2307 burial payments.

Appellant was entitled to and has received DIC pursuant to 38 U.S.C. § 1318. In addition, funeral and burial expenses were reimbursed in the maximum amount of $300 pursuant to 38 U.S.C. § 2302(a) (*see also* 38 U.S.C. § 2303(a)). Transportation costs in the amount of $55 were paid in accordance with 38 U.S.C. § 2308. In pressing her claim for service connection of the veteran's death pursuant to 38 U.S.C. § 1151, appellant argues that an affirmative decision would make her eligible for reimbursement of funeral and burial expenses in the amount of $1500 under 38 U.S.C. § 2307 instead of the $300 she received pursuant to 38 U.S.C. § 2302(a) (or 38 U.S.C. § 2303(a)). The Secretary takes the position that the $1500 benefit described in 38 U.S.C. § 2307 is not available when service connection is established under 38 U.S.C. § 1151.

■ In *Gardner v. Derwinski,* 1 Vet.App. 584 (1991), *aff'd sub nom. Gardner v. Brown,* 5 F.3d 1456 (Fed.Cir.1993), this Court reviewed the very statute presently at issue, 38 U.S.C. § 1151. While the Court's review in *Gardner* was focused on a different aspect of § 1151, namely whether it required an element of fault before a favorable service connection determination could be reached, the Court's holding is applicable here: "the plain language of section 1151 must be implemented." *Gardner,* 1 Vet.App. at 588. The plain meaning of a statute "must be given effect unless a 'literal application of [it] will produce a result demonstrably at odds with the intention of the drafters.'" *Id.* at 586–87 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Only where a statute's plain meaning leads to such an absurd result that Congress clearly never could have intended is this "plain meaning rule" abandoned for a review of the applicable legislative history and statutory construction. *Gardner,* 1 Vet.App. at 587–88.

The plain meaning of 38 U.S.C. § 1151 is unambiguous: a finding of "as if" service connection creates entitlement in appropriate instances to "disability or death compensation under [chapter 11] and [DIC] under chapter 13 of" title 38; conspicuously absent is any reference to chapter 23. Therefore, a claimant receiving a favorable ruling of "as if" service connection under that section would be entitled to any applicable benefits under chapters 11 or 13. However, such a claimant would not be entitled to chapter 23

burial benefits, including reimbursement of $1500 under 38 U.S.C. § 2307, unless service connection is established under a statutory provision other than 38 U.S.C. § 1151. Simply stated, a determination of "as if" service connection under 38 U.S.C. § 1151 may create entitlement to benefits under chapters 11 and 13, but not to benefits under chapter 23.

Appellant has been in receipt of DIC benefits under 38 U.S.C. § 1318 since the time of the veteran's death and she received the maximum reimbursement permitted under 38 U.S.C. §§ 2302 and 2308 for transportation, funeral, and burial expenses. Since appellant has failed to demonstrate her actual or potential entitlement to any additional benefits were the veteran's death to be treated "as if" service connected under § 1151, and the Court having found none, the Secretary did not commit legal error in declining to review appellant's claim and in refusing to render what would have been, in essence, an advisory opinion. Under the circumstances, the BVA lacked jurisdiction to entertain appellant's claim because it did not arise "under a law that affects the provision of benefits by the Secretary" to her. 38 U.S.C. § 511(a); cf. *Darrow v. Derwinski*, 2 Vet.App. 303 (1992).

## IV. Conclusion

On consideration of the parties' pleadings and the Secretary's motion for reconsideration, the May 19, 1992, decision of the Board is AFFIRMED.