# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 24-0333

JAMES P. WILLEN, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided May 21, 2025)

*Glenn R. Bergmann* and *Thomas M. Polseno*, both of Rockville, Maryland, for the appellant.

*Richard A. Sauber,* General Counsel; *Mary Ann Flynn*, Chief Counsel; *Megan C. Krall* Deputy Chief Counsel; and *Melissa C. Loomis,* all of Washington, D.C., were on the brief for the appellee.

Before GREENBERG, FALVEY, and LAURER, *Judges*.

FALVEY, *Judge*: Navy veteran James P. Willen, through counsel, appeals that part of a November 30, 2023, Board of Veterans' Appeals decision that he believes denied him a rating above 30% for major depressive disorder (MDD) and total disability based on individual unemployability (TDIU), both before April 11, 2016. Mr. Willen does not challenge the issues remanded by the Board.

This matter is before a panel of this Court to decide whether the Board's conclusion that the period on appeal did not extend any earlier than April 11, 2016, is a final Board decision within our jurisdiction. The Secretary believes that, because the Board otherwise remanded Mr. Willen's rating for the period on appeal—April 2016 through November 2021, it did not issue a final decision. We disagree.

When addressing Mr. Willen's rating, the Board concluded that the period on appeal did not extend to his initial application because a September 2014 rating decision stemming from that application had become final. Thus, the Board found that the period on appeal began in April 2016, a year before his increased rating claim. And so, the Board refused to exercise jurisdiction over his rating before April 2016.

It was only after the Board made this decision that it remanded what was left of Mr. Willen's request for a higher rating back to the VA regional office (RO) for more development. There is no sign that VA contemplated any further adjudication on the issue of Mr. Willen's compensation before April 2016. After all, the Board said the period on appeal did not extend back that far. Thus, the Board's decision foreclosed Mr. Willen from getting a higher rating or TDIU before that date. The Board's decision was a denial of those benefits even if it did not format its decision appropriately. Because the Board denied Mr. Willen benefits before April 2016, we hold that it issued a final decision.

Because we find that the Board issued a final decision, we must also decide whether remand or reversal is appropriate for the Board's conclusion that the January 2014 claim became final. The Secretary concedes that, at minimum, the Board missed several documents in the record relevant to deciding whether VA received new and material evidence within a year of the 2014 rating decision. As an alternative to dismissal, he thinks that we should remand the matter for the Board to look at the evidence in the first instance and decide whether it is new and material. Mr. Willen thinks that's not necessary. As he sees it, the evidence is so plainly relevant to his claim that it clears the low bar needed for new and material evidence. We agree.

Within a year of VA denying him a rating above 30% for his psychiatric disability, Mr. Willen submitted evidence of suicidal ideation. On its own, this evidence was enough to potentially result in a 70% rating. Thus, there is no doubt he met the low bar for new and material evidence. And so, we reverse the Board's conclusion that his 2014 claim became final and remand the matter to have VA consider Mr. Willen's rating, including TDIU, for the period starting with his 2014 application.

## I. FACTUAL BACKGROUND

### A. Mr. Willen applies for VA benefits.

Mr. Willen applied for service connection of several disabilities in January 2014. Record (R.) at 5566-67. VA granted service connection for MDD in September 2014 and assigned a 30% rating effective January 2014. R. at 4771-88. Within a year of this decision, VA received several records.

First, in March 2015, VA received documents from Mr. Willen's Social Security Administration (SSA) disability claims file. *See* R. at 4561-642. Then, in June 2015, Mr. Willen

2

submitted his own VA medical records from January 2014 through May 2015. *See, e.g.,* R. at 3386-98. This submission included evidence of suicidal ideation from January 2014. R. at 4552-53. As Mr. Willen then told VA, he submitted these records as part of his "claim for increase to [his] pending claim." R. at 3400. VA's response can best be described by borrowing a bureaucratic term: nothing followed.

B. Mr. Willen applies for a higher rating, leading to his first Court appeal.

Whether Mr. Willen was giving VA time or he simply gave up, we don't know. But Mr. Willen did not reach out to VA about his MDD rating until April 2017, when he filed a claim for a higher rating. R. at. 3304-09. VA denied that claim a few months later, launching Mr. Willen's yearslong quest for a higher rating.

For our purposes, the relevant events pick up again in November 2021 when VA obtained a medical opinion following a Board remand. R. at 1701-06. This opinion led VA to increase Mr. Willen's MDD rating to 70% effective the date of the November 2021 exam. R. at 787-89. And a few months later, VA also granted Mr. Willen TDIU effective January 2022. Mr. Willen then took his quest for higher compensation to the Board.

Once there, the Board moved his TDIU effective date to November 2021, but doubled down on the MDD rating of 70% effective November 2021. R. at 532-36. This brought Mr. Willen to this Court and culminated in the Court's granting a joint motion for partial remand in which the parties agreed to return to the Board the issues of Mr. Willen's MDD rating and TDIU before November 2021. R. at 398.

C. On remand, the Board rejects Mr. Willen's argument that his claim remained pending.

When the case returned to the Board, Mr. Willen argued that his January 2014 claim remained pending under 38 C.F.R. § 3.156 because VA received new and material evidence within one year of the September 2014 rating decision, including an August 17, 2015, VA Homeless Program Note reflecting severe psychiatric symptoms. *See* R. at 29; 5569-70. To prove his entitlement to a higher rating for that period, he also submitted a private, retrospective medical opinion that relied in part on evidence dating from January 2014. *See* R.at 33-36. What happened next brought Mr. Willen before us today.

3

In November 2023, the Board remanded several issues, including a rating higher than 30% for MDD and TDIU before November 9, 2021. R. at 1-13. The Board did not include a section purporting to deny any benefits. *Id*. So why is Mr. Willen appealing a remand?

Before it remanded his claims, the Board said exactly what benefits remained in play, in a section entitled "*Preliminary Matters.*" In this section, the Board addressed and resolved Mr. Willen's argument that an increased rating remained available as of January 16, 2014. R. at 6-7. In response to his argument, the Board concluded that the September 2014 rating decision was final, because "no additional evidence pertinent to the issue was physically or constructively associated with the claims folder within one year of that decision." R. at 6.

As for the evidence Mr. Willen mentioned, the Board stated that it couldn't find it or "any of the 2015 VA Homeless Program Notes." R. at 7. So the Board soundly rejected Mr. Willen's argument about an effective date going back to 2014, concluding instead that the "the period on appeal is from April 11, 2016, one year before receipt of the Veteran's [April 11, 2017] claim, to the present." R. at 7. It was only after limiting the period on appeal that the Board remanded the rest of the claim for VA to decide Mr. Willen's rating. *Id*. In that remand, the Board ordered development tied to the "period on appeal"—the period from April 11, 2016, to the present. *Id*.

When Mr. Willen appealed the Board decision to the Court, the Secretary asked us to dismiss it for lack of jurisdiction, reasoning that Mr. Willen was trying to appeal from a remand—something foreclosed by precedent.

But that's not how Mr. Willen sees it. He doesn't want to challenge the Board's remand. He knows that's a losing battle. His disagreement is with the Board's conclusion that the period on appeal can't be any earlier than April 2016. We denied the Secretary's motion but gave him leave to renew the arguments in his merits briefing. The Secretary took us up on that.

## II. THE PARTIES' ARGUMENTS

Now at the merits stage, the Secretary renews his insistence that there is nothing for the Court to review. The Secretary reminds us that we review only final Board decisions. And final decisions are ones that grant or deny benefits, something the Board says it did not do in the November 2023 decision because it "remanded the only issues of entitlement to an increased rating for MDD, TDIU, and SMC and did not deny entitlement to any benefits." Secretary's Brief (Sec. Br.) at 4. The Secretary doesn't deny that the Board addressed Mr. Willen's argument, but he points

out that we have held that the Board's conclusion that an earlier claim became final is not an appealable decision when VA was not actually deciding the claimant's effective date. *Id*. at 7-9.

As before, Mr. Willen disagrees. As he explains, he "made his finality argument to preserve the possibility of an effective date earlier than April 11, 2016, because it was possible that the Board would grant the benefits sought in full." Appellant's Reply Brief (App. R. Br). at 2. And he believes that "[t]he only reason for the Board to address that argument in a remand order was to finally narrow the issues before" VA. *Id*. He also notes that "[t]he Board didn't say its discussion wasn't final, or was subject to change depending on future events." *Id*. And he warns against letting the Secretary "put such words in the Board's mouth for purposes of litigation." *Id*.

Besides asking us to reject the Secretary's argument about jurisdiction, Mr. Willen also asks that we reverse the Board's conclusion about new and material evidence. He acknowledges that we have very limited authority to make initial findings of fact, but he believes there is no way to look at the evidence VA got within a year of the 2014 decision without finding at least some of it new and material.

For his part, the Secretary doesn't defend the Board's new and material evidence conclusion. He agrees that the evidence was there, despite the Board's contrary conclusion. But if we reject his argument about jurisdiction, he asks us to remand, not reverse the Board's conclusion. It is for the Board to do the initial fact finding and you can't find facts about evidence that you can't find. So the Secretary believes that the Board needs to look at the evidence and make the initial call about whether it is new and material. We agree with Mr. Willen.

### III. LEGAL BACKGROUND

A. Effective dates flow from the date of claim and when entitlement can be ascertained.

Before explaining why, there are some legal principles we need to review to understand the parties' dispute. Mr. Willen's end goal is to have VA award his current 70% rating and TDIU before November 2021; TDIU is just another option for a higher rating for his MDD. This is because "TDIU is not a separate claim. It is one way to get the appropriate rating for a disability." *Phillips v. McDonough*, 37 Vet.App. 394, 401 (2024). Thus, no matter how we look at it, the question for the Board was the appropriate way to rate Mr. Willen's disability before November 2021. Mr. Willen has submitted evidence that he believes supports making his 70% rating or TDIU

5

effective before this date. His quarrel with the Board decision is that it limited how far back his benefits can go.

This is because the effective date for his higher rating is at least partially controlled by his date of claim. *See id*. at 400. There are two types of increased rating claims. A request for a higher rating than the one VA first assigns after it awards service connection and rates a disability—basically a disagreement with the initial rating or a request for an increased initial rating. *Id*. And a request for a higher rating that a veteran files after service connection has been in effect for some time. *Id*. Both types of increased rating claims require VA to look at the facts—after all, VA can only award a higher rating when it is ascertainable that the evidence supports that rating. *See generally*, 38 U.S.C. § 5110 and 38 C.F.R. § 3.400 (2024).

But the type of increased rating claim and the date of claim impact how far back VA can or needs to look. For an initial rating, the earliest date VA can award is the date of claim. 38 C.F.R. § 3.400. So even if VA initially assigns a 30% rating but the veteran disagrees and shows that the evidence supports a 70% rating from the day the veteran filed the claim, VA needs to award that rating effective the date of claim. If the veteran later files a request for a higher rating, VA can look up to a year before that new date of claim when deciding whether to award a higher rating. 38 C.F.R. § 3.400(o)(2). And if the evidence supports an increase up to a year before the date of claim, VA can award the higher rating effective even before the veteran filed the claim. Both types of increased rating claims are relevant to Mr. Willen's appeal.

Recall that Mr. Willen first applied for service connection in January 2014. As he sees it, his original claim for MDD never became final, so VA needs to look at his rating all the way back to when he first applied. Presumably, Mr. Willen would like his current rating to go back to that January 2014 date. But the Board said the period on appeal doesn't go back to 2014 because the Board found that claim was final. Instead, the Board found the period on appeal must be based on his April 2017 claim. And so, because the law allows for the effective date to go back 1 year before the application, the Board concluded that the period on appeal goes back to 2016. This Board conclusion stopped VA from looking at Mr. Willen's rating before April 2016. Mr. Willen disagrees and invokes 38 C.F.R. § 3.156.

6

B. New and material evidence can reopen a claim or keep one from becoming final.[1]

A regulation provides a path to reopen previously denied claims. To do that, VA must receive new and material evidence. 38 C.F.R. § 3.156(a) (2024). Once VA gets that evidence, it can reopen and readjudicate the claim. But there is another important feature to § 3.156. If VA receives new and material evidence within a year of a decision, it needs to treat that evidence as part of the initial claim. 38 C.F.R. § 3.156(b). And if it doesn't do the required new and material analysis, that can keep a claim from becoming final. *See Lang v. Wilkie*, 971 F.3d 1348, 1355 (Fed. Cir. 2020). This is what Mr. Willen believes happened in his case.

Remember all the evidence VA received within a few months of the 2014 decision? VA never acted on that evidence. Thus, Mr. Willen believes that his claim was never final, particularly because the evidence includes new evidence that is relevant to his MDD claim.

The Board rejected this theory because it looked at the record and did not find any new evidence within a year of the 2014 decision. At this point, we all know the Board was wrong—the records are there. So, reasoning that the Board's conclusion is wrong and cut off years of benefits, Mr. Willen would like us to fix the Board decision.

The Secretary says we can't do that because the Board didn't deny anything, it just remanded Mr. Willen's claims. And so, the Secretary believes there is no final Board decision within our jurisdiction.

### C. This Court reviews final VA decisions that deny benefits.

As a Court created by statute, we are limited to the jurisdiction given to us by Congress in that statute. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). That's section 7252 for this Court. In that statute, Congress gave us the "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." 38 U.S.C. § 7252(a).

We've read this to mean that we have "exclusive jurisdiction to review decisions from the Board . . . that are adverse to the appellant and are final—that is, they are not tentative or interlocutory in nature but represent the culmination of the Agency's consideration of an issue." *Cooper v. McDonough*, 38 Vet.App. 1, 2 (2024) (citing 38 U.S.C. §§ 7252(a); 7266(a)).

---

[1] In 2017, Congress changed the law to require the submission of "new and relevant" evidence for VA to "readjudicate" a denied claim. Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. 115-55, 131 Stat. 1105, 1109. Our case deals with the old version of the law.

"[G]overning caselaw has consistently interpreted the phrase 'decision of the Board' in section 7252 as involving an adjudication with respect to the grant or denial of benefits." *Id*. at 7 (citing *Maggitt v. West*, 202 F.3d 1370, 1376 (Fed. Cir. 2000)). And it is this finality and denial of benefits that the Secretary says is missing here. Where Mr. Willen sees a denial of benefits, the Secretary sees only a non-final remand.

When it comes to remands, both this Court and the Federal Circuit have held that a remand from the Board is not a final appealable decision. Thus, in *Kirkpatrick v. Nicholson*, the Federal Circuit found that a Board remand, although arguably erroneous, was not a final decision granting or denying benefits that this Court could review. 417 F.3d 1361, 1364-65 (Fed. Cir. 2005).

Likewise, in *Howard v. Gober*, the Federal Circuit held that we properly dismissed an appeal from a Board remand. 220 F.3d 1341, 1344 (Fed. Cir. 2000). Howard argued that the Board failed to adjudicate his clear and unmistakable error (CUE) allegations and related legal theories when it remanded his new and material evidence claim. But the Federal Circuit held that it did not matter that the Board failed to address the CUE theory in the remand because that remand was not a final Board decision; without a final decision, this Court was without jurisdiction to address the issue. *Id*. ("[T]he Board has not yet rendered a final decision on the CUE claim that may be appealed to the Court of Appeals for Veterans Claims. If . . . the Board simply did not address the CUE claim, the Board's remand does not constitute a final decision that may be appealed.").

And in *Breeden v. Principi*, we held that a Board remand that does not make a final determination about benefits sought "does not represent a final decision over which this Court has jurisdiction." 17 Vet.App. 475, 478 (2004) (per curiam order).

But the issue is not as simple as looking at whether the Board said that it was granting or denying benefits. For example, even if the Board doesn't say that it is denying a claim, it can still produce a final, appealable decision. Most recently, the Federal Circuit confronted this issue in *Bean v. McDonough* when it reaffirmed "the legal principle that, when a claim is adequately presented to the Board and not addressed, the Board's disposition of the appeal constitutes a decision of the Board on that claim that may be appealed to the Veterans Court." 66 F.4th 979, 989 (Fed. Cir. 2023).

The important thing to remember from *Bean* is that the Board still issued a final decision when it dismissed Mr. Bean's appeal. The question was whether the Board's failure to address another theory when it issued that dismissal was a denial. *Id*. The Federal Circuit held that it was.

8

With no comment from the Board and no remand that left a case pending, the unaddressed claim was final absent help from the courts. Thus, the Federal Circuit held that a "[d]enial of a claim, which includes the failure of the Board to consider a claim that was reasonably raised before it, constitutes a decision of the Board—reviewable by the Veterans Court." 66 F.4th at 988.

Along this same line, we recently held that the Board's refusal to docket an appeal, even when not phrased as a denial of benefits, was a final Board decision that fell within our jurisdiction. *Cardoza v. McDonough*, 37 Vet.App. 407, 413 (2024). Key to *Cardoza* was the Court's conclusion that when refusing to docket the appeal of an earlier effective date, the Board extinguished the chance for that benefit. *Id*. The Board's dismissal was thus a denial, in fact if not in name.

These cases reaffirm that, even if the Board hasn't necessarily phrased its decision as denying a particular benefit, its actions can still be a denial when they cut off the path to benefits. And they also establish that, particularly with cases like *Cardoza*, the Court needs to look at what the Board's actions effectively do, not just what the Board said. *See id*. The Board may not phrase something as a denial, but if the Board's actions close off a path to benefits without further development, we can conclude that it has issued a final decision.

To make things more complicated, it's possible that, even when the Board gives a conclusion that looks decisive and it does so with findings that look final, it hasn't produced a final appealable decision.

To make this point, the Secretary reminds us of our decisions in *Acosta v. Principi*, 18 Vet.App. 53 (2004), and *Dallman v. Wilkie*, 33 Vet.App. 101 (2020). Both cases deal with the Board's conclusion that an earlier VA decision became final. *Acosta*, 18 Vet.App. at 56; *Dallman*, 33 Vet.App. at 107. The Board made this conclusion in the context of reopening previously denied service-connection claims under § 3.156. *Id*. At bottom, both cases involved findings made in the context of reopening service connection. To even reach the question of whether to consider or award service connection, the Board had to get through § 3.156. And it did that by concluding that previous VA decisions became final.

In both cases we held that the Board determination was not a final Board decision because the Board had remanded the underlying service-connection claims. Our reasoning turned on the fact that the issue before the Board in both cases was service connection, and more specifically whether to reopen a previously denied claim, something that could then lead to considering service connection on the merits. *Dallman*, 33 Vet.App. at 108. As we explained, "the Board's threshold

9

finality determination has no preclusive effect on potential effective dates during the downstream earlier-effective-date litigation." *Id*. In other words, the issue of effective date was not before the Board, thus the Board did not make any binding findings relevant to effective date. *Id*.

This makes sense. If the Board is concentrating on resolving one issue—whether to reopen and potentially grant service connection—it is not looking to make a decision that deals with when a claim became final for purposes of deciding a claimant's effective date. The effective date only becomes relevant many steps down the line once VA has granted service connection. *Id*.

So what have we learned so far about finality? We know that a Board decision can be final even if the Board does not expressly say that it is denying a benefit. *See Bean*, 66 F.4th at 989. And we know that we must look at the actions the Board took and whether those actions impact the claimant's benefits. *See Cardoza*, 37 Vet.App. at 413. If, as in *Bean* or *Cardoza*, there is no more deciding for VA to do, VA has denied the benefit even if it didn't format that as a denial. *Id.* On the flip side, remands are not final; even if the Board did not discuss an issue—as was the case in *Kirkpatrick*—the fact that VA was still working on the ultimate benefit determination means there was no final Board decision.

Along this same line, we know that, even when the Board makes a finding about an issue, that decision may not be final if the Board is not adjudicating the actual benefits question. Thus, if the Board says something that could be relevant to an effective date—such as that an earlier decision is final—but the Board is adjudicating service connection, we have held that the Board is not making a final decision. *Dallman*, 33 Vet.App. at 108. Deciding an effective date is so far removed from the Board's reopening analysis, and there are so many more questions yet to address, that the Board's discussion of finality is not a binding final decision.

These cases give us a solid foundation for reviewing whether the Board reached a final decision in Mr. Willen's case. But remember, to come within our appellate jurisdiction, the Board needs to have denied a benefit in that final decision. And deciding whether the Board did that may not be as easy as it seems.

Not every Board denial is a denial of benefits. Much like any adjudicative body, the Board denies motions. But we've held that the Board's denial of such motions is not a final Board decision because it does not involve the denial of benefits. For this reason, the Board's denial of a motion waiving VA's duty to assist was not a final decision. *Clark v. McDonough*, 35 Vet.App. 317, 322 (2022), *aff'd sub nom. Smith v. McDonough*, No. 2022-2213, 2024 WL 981143 (Fed. Cir. Mar. 7,

10

2024). The same is true of the Board's denial of advancement on the docket, *Heller v. McDonough*, 38 Vet.App. 75, 84 (2024), or the Board's refusal to certify a class. *Skaar v. Collins*, __Vet.App. __,__, No. 24-5887, 2025 WL 1231033(Apr. 29, 2025).

Think of it this way: no one applies to VA with the end goal being the ability to certify a class or get on a specific Board docket. Claimants apply for service connection or VA medical care. So, if VA is not denying something that will impact eligibility for VA care or the amount of compensation, odds are good it is not denying a benefit. And with the concept of benefit in a "final denial of benefits" now refreshed, we can turn to whether the Board's November 30, 2023, decision is appealable.

## IV. ANALYSIS

A. The Board finally denied higher compensation when it concluded that the period on appeal did not extend beyond before April 2016.

So did the Board issue a final denial of benefits? Yes. To understand why, we must first consider what the Board was asked to address and how it responded. The issue before the Board was how to rate Mr. Willen's MDD and whether he qualified for TDIU before November 2021. To get its hands around that task, the Board had to decide how far back to look when deciding Mr. Willen's compensation. Quite reasonably, the Board began its analysis on that issue.

In so doing, the Board rejected Mr. Willen's argument that it should consider his rating as far back as January 2014. Thus, the Board limited its consideration of Mr. Willen's rating to what it thought was "the period on appeal[,] from April 11, 2016, . . . to the present." R. at 7. It was only once the Board concluded that it would consider Mr. Willen's rating only from April 2016 that it remanded that claim, specifically with instructions limiting development to "the period on appeal." R. at 9. At that point, neither the Board nor any other part of VA was considering Mr. Willen's rating before April 2016. This was a final denial of benefits for the period before April 2016.

The benefits element is relatively easy. If final, the Board's conclusion that the period on appeal started in 2016 cut off the possibility of increased VA benefits before that date. In that sense, VA's actions in this case correspond to VA's actions in *Cardoza*. There, VA's decision to not docket Mr. Cardoza's earlier effective date appeal meant that Mr. Cardoza was cut off from additional compensation. *Cardoza*, 37 Vet.App. at 413. And in Mr. Willen's case, the Board's conclusion that his appeal only included his rating from April 2016 did the same thing. Even

11

though the Board did not phrase its conclusion in terms that granted or denied benefits or as a refusal to docket an appeal, the Board's decision was a denial, just as the refusal to docket an appeal in *Cardoza* was a denial. But was it final?

This is the more complicated question. At first blush Mr. Willen's case looks a lot like *Accosta* or *Dallman*. We have a Board remand of a benefits claim plus a discussion that an earlier VA decision became final. These cases should control, no? Not so.

Recall that in *Accosta* and *Dallman* the Board was dealing with service connection. *Acosta*, 18 Vet.App. at 56; *Dallman*, 33 Vet.App. at 107. We held that the Board's discussion of finality was not a final decision that would impact the downstream issue of effective date because that was not before the Board. *Id*. Simply put, the Board was not deciding, nor could it decide, those claimants' effective date before VA ever granted service connection.

That's not what we have here. If effective date was downstream in *Accosta* and *Dallman*, then the Board was chest-deep in it here. Mr. Willen had already waded through the claims process to get service connection. The question before the Board included how to rate that granted disability and for how long; in effect, it was the effective date of Mr. Willen's 70% rating and TDIU before 2021. It was in resolving this issue that the Board rejected Mr. Willen's argument and cut off anything before April 2016 from the period on appeal. Only after the Board narrowed the scope of Mr. Willen's appeal did it remand the matter for VA to consider Mr. Willen's claim. At that point, the Board's remand did not include Mr. Willen's benefits from January 2014 to April 2016. VA was done with that period.

Thus, this is not a situation where the Board made a nondispositive finding on the way to the merits of a service-connection claim, where VA could return to the issue when it eventually considers effective date. The effective date here was not an abstract concern that could come up if benefits were eventually granted. Instead, the Board was supposed to deal with the issue of rating and effective date right then and there. And while it was doing that, it cut off more than 2 years from Mr. Willen's potential benefits. Only after doing so did the Board remand his claim—now limited to April 2016—for VA to consider the appropriate rating for what was left.

Nor is this a situation like in *Howard* where the Board issued a remand without addressing a theory but leaving the possibility of a grant open. 220 F.3d at 1344.[2] Here the Board addressed

---

[2] The Board is busy. Thus, in some cases—such as *Howard*—it can remand a matter without addressing all potential issues in a case. But to adopt the Secretary's view of Mr. Willen's case we would have to believe that, despite

12

and rejected Mr. Willen's theory of entitlement before April 2016. By its rejection, the Board limited his entitlement to benefits—it told him VA was not considering higher ratings before April 2016. In *Howard* it was still possible for VA to grant the requested benefit—we did not have any indication how VA would treat the unaddressed theory, thus, there was no final denial. *Id*. But here, the Board decided that it would not consider Mr. Willen's rating before April 2016.

Another way to look at what the Board did is as a refusal to exercise jurisdiction over Mr. Willen's claim before April 2016. We've long reviewed the Board's refusal to exercise jurisdiction. *See Mintz v. Brown*, 6 Vet.App. 277, 281 (1994). And both this Court and the Federal Circuit have held that the Board issues a final decision when it declines jurisdiction, even if it does not expressly tell us that it's denying a benefit. *See Bean*, 66 F.4th at 988; *see also Cardoza*, 37 Vet.App. at 413 (holding that, even if a Board action "does not appear to deny a benefit, the Board's unequivocal refusal to review [an] appeal had the same effect").

In the end, no matter how we look at it, there is no way to read the Board's finding that the period on appeal did not extend back to January 2014 as anything but a final decision. To get to that finding, the Board evaluated evidence and argument and it considered the law. And because of the Board's decision, VA would no longer consider or award Mr. Willen increased benefits for the period before April 2016. Thus, we hold that the Board issued a final decision denying Mr. Willen's benefits for the period before that date. If the Board said the period on appeal did not extend beyond April 2016, we take the Board at its word. But that means the Board denied benefits before April 2016.

B. We reverse the Board's conclusion that Mr. Willen did not submit new and material evidence.

With the issue of the Board's final denial of benefits resolved, the question becomes, what happens next? The parties agree that the Board erred when it concluded that VA had not received new and material evidence after the September 2014 decision. Yet the Board concluded there was no new evidence. Or more accurately, it said it couldn't find the evidence. But the evidence was

---

a crushing workload, the Board spent time analyzing the merits of Mr. Willen's argument. It explained why it rejected that argument and issued a remand relying on the limited appeal period. All while intending the entire discussion and analysis to have no impact.

Nothing in the Board's discussion suggests this. Nothing implies the Board's conclusion about the issue before it was preliminary or that VA would revisit the matter. Instead, the Board's decision was a purposeful effort to narrow the scope of the issues before it.

there. And there is no question that VA did not have this evidence when it first made the September 2014 decision.

Mr. Willen would like us to look at the records, including evidence that he was suffering from suicidal ideation, and conclude that it was new and material to his MDD rating. The Secretary believes we can't do that because the Board has not reviewed the evidence. We agree with Mr. Willen.

As we already discussed, VA will reopen a denied claim if the claimant submits new and material evidence supporting the claim.[3] 38 U.S.C. § 5108; 38 C.F.R. § 3.156(a). For a legacy claim such as we have here, "[n]ew evidence means existing evidence not previously submitted to agency decisionmakers." 38 C.F.R. § 3.156(a). And "[m]aterial evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim." *Id*.

Deciding whether evidence is new and material typically calls for a factual inquiry by VA. *See Suaviso v. Nicholson*, 19 Vet.App. 532, 533 (2006) (citing *Prillaman v. Principi*, 346 F.3d 1362, 1367 (Fed. Cir. 2003)). As with other findings of fact, we review the Board's new and material determinations for clear error. *Id*.

"'A finding is "clearly erroneous" when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Or in other words, "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).

This high bar is particularly relevant because, as the Federal Circuit has frequently reminded us, we can neither find facts nor weigh evidence in the first instance. *Stinson v. McDonough,* 92 F.4th 1355, 1360-36 (Fed. Cir. 2024) (*citing Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013). That said, even if the Board did not resolve an issue, we can resolve facts "if it is clear that the factual basis for such conclusion is not open to debate and the Board on remand could not have reached any other determination on that issue." *Tadlock v. McDonough*, 5

---

[3]*See* note 1, *supra*.

F.4th 1327, 1336 (Fed. Cir. 2021). This is just such a case; the Board's new and material evidence conclusion is sufficiently pungent.

When VA granted Mr. Willen's service-connection claim, it assigned a 30% rating. R. at 4771. Within a year of that decision, Mr. Willen submitted VA records showing that he suffered from suicidal ideation around the time he filed his claim. R. 4552-53. Suicidal ideation is a symptom expressly contemplated by the 70% rating criteria. 38 C.F.R. 4.130 (2024). This is why we have held that "the language of the regulation indicates that the presence of suicidal ideation alone, that is, a veteran's thoughts of his or her own death or thoughts of engaging in suicide-related behavior, may" qualify for a 70% rating. *Bankhead v. Shulkin*, 29 Vet.App. 10, 20 (2017)

This means that, even ignoring all other evidence that VA received within a year of the 2014 decision—which could require more nuanced weighing and comparing to the records VA already reviewed—we can safely conclude that evidence supporting a 70% rating received within a year of when VA denied a rating above 30% is new and material evidence. VA hadn't looked at this evidence before—so it is new. And it tends to prove that Mr. Willen qualifies for a higher rating—so it's material. 38 C.F.R. § 3.156(a).

Thus, we can conclude that the Board clearly erred when it concluded that Mr. Willen had not submitted new and material evidence within a year of VA's rating decision. And because VA failed to act on that evidence, VA's 2014 decision never became final. This in turn means that Mr. Willen's appeal is not from his April 2017 application for a higher rating but is a continuation of his disagreement with VA's initially assigned rating. And so, the Board's conclusion that the period on appeal is limited based on the April 2017 application is clearly erroneous. This is true for both the MDD rating—the pending claim—and TDIU—which is just one rating option available to VA when rating Mr. Willen's MDD. *See Phillips*, 37 Vet.App. at 401.

With the Board's conclusion about the period on appeal reversed, we will remand the matter to the Board so that it can adjudicate the issue of Mr. Willen's rating and TDIU going back to 2014.

## V. CONCLUSION

Based on the above, that part of the November 30, 2023, Board decision concluding that the January 2014 claim became final and that the period on appeal did not extend to that claim is REVERSED and the matter is REMANDED so that VA can resolve Mr. Willen's initial rating appeal.

15